## MOORE vs. LEA'S ADM'R.

[ACTION AGAINST MASTER WORKMAN FOR BREACH OF CONTRACT.]

1. *Competency of agent as witness for principal.*—An agent, employed to procure lumber which his principal had agreed to furnish for the building or repairing of a church, is a competent witness for his principal, under section 2302 of the Code, in an action brought by the latter against the master workman for a failure to perform the contract, although the defendant relies on the unsuitableness of the lumber as an excuse for his non-performance.

2. *Relevancy of evidence rebutting proof of readiness and willingness to perform.*—Defendant having proved that, at the time agreed on, he went to the place where the work was to be done, with his tools and workmen, for the purpose of commencing the work, but found fault with the lumber furnished by plaintiff, and did not begin the work,—any evidence, tending to show that he was at that time really proceeding to another place in the neighborhood, where he had undertaken another job, and falsely pretended that he was ready and willing to enter upon the performance of his contract with plaintiff, is relevant and admissible for the plaintiff, in rebuttal.

3. *Opinion of witness as expert, and general objection to evidence.*—A witness, who was a lumber-dealer and the owner of a saw-mill, and who had furnished the lumber the quality of which was in controversy, having testified, "that he had delivered a great deal of lumber, and was a judge of the quality of lumber; and that the lumber delivered by him was a fair average lot of lumber, and was in the aggregate fully as good as the average delivered and used in the country on buildings and for work of the kind specified in said contract,"—*held*, that a general objection to this evidence might be over-

ruled entirely, because the opinion of the witness, as to the quality of the lumber delivered by him for the job in controversy, was good in part.

4. *Authority of agent, and non-performance of contract.*—Where a workman, having been authorized by his employer to examine and decide upon the quality of the lumber to be used in the work, which the employer himself had agreed to furnish, but which he had engaged a third person to procure for him, failed to enter on the performance of the work under his contract, but did not notify his employer of the unsuitableness of the lumber,—*held*, that the agency did not authorize the workman to create an excuse for his non-performance and neglect of duty as undertaker, by failing as agent to give notice to his employer, within a reasonable time, that the lumber was unsuitable for the work.

APPEAL from the Circuit Court of Madison.
Tried before the Hon. WM. S. MUDD.

THIS action was brought by the administrator of H. H. Lea, deceased, against Hugh N. Moore, to recover damages for the breach of a written contract, which was in these words:

"I agree to do the following work on the Presbyterian church at Whitesburg, in the best plain workmanship—that is: "One neat pulpit, $30; 10 stone pillars, 2 feet longer than the old ones, and 2 feet wide at bottom, diminishing to size of sill, $80; extra studs in wall, $4; patching weather-boarding, $5; 2 door-frames, with transom, $10; hanging, fitting, and locks to 2 doors, $2; —— out window-casing, $8; closing below sills with studs, $8; platform, with steps, $52; belfry, without blinds, $30; joists overhead, $3; —— and glazing windows, $8; raising house 4½ feet, $15; hanging ten pairs of blinds, $11,25; cornice and roof to front, $30—$299. The belfry to be 8 feet square, with pilasters at each corner, and a neat cornice all around; the front to have 7 square-dressed columns, with horizontal and raking cornice of a neat and suitable kind, not inferior to that on Mrs. C——'s house in Huntsville. I furnish no materials, except the stone, &c., for the pillars. I agree to have the work done as soon as possible after the materials are furnished, for which H. H. Lea agrees to pay, when the work is done, $299. Witness our hands and seals, this 20th November, 1852." (Signed by both the parties.)

The complaint set out this contract, and alleged that

"plaintiff's intestate complied with all its provisions on his part, and furnished the materials and lumber according to the stipulations of said agreement; but that defendant wholly failed to comply with any of the provisions thereof, whereby the materials and lumber furnished by plaintiff's intestate, which were of the value of $500, were wholly lost." No pleas appear in the record.

The plaintiff introduced one H. P. Evans as a witness, who had been employed by his intestate to procure the lumber for the work specified in the contract, and who had procured the lumber for that purpose, and had been. paid for it by the intestate. The defendant objected to the competency of this witness, on the ground of interest, and reserved an exception to the overruling of his objection. This witness testified, "that he was a lumber-dealer, and the owner of a saw-mill, to which he gave his personal supervision; that he had for one year paid special attention to the selection and delivery of lumber, and had delivered a great deal of lumber, and was a judge of the quality of lumber; and that the lumber delivered by him was a fair average lot of lumber, and was in the aggregate fully as good as the average delivered and used in the country on buildings and for work of the kind specified in said contract. To the admission of the opinion of this witness the defendant excepted."

The defendant read in evidence to the jury a letter from the plaintiff to himself, dated the 1st January, 1853, which was in these words:

"Dear Sir: I was up at Whitesburg some days since, and examined the timber then delivered. All looked tolerably well, with the exception of what I took to be the columns for the front. They did not look to me like they would do at all for that part of the job. The weather has been so bad ever since, that I could not get up there. The timber for the columns must be sound, and have perfect corners, or it will be a poor-looking job when done. I wish you to look well to the timber being of good quality that you put in the job, for that was the contract, and must be adhered to strictly. Simpson can, I know, furnish

pieces that will suit for columns. He will be passing Whitesburg soon, and I would like if you could see him, and get him to get another set. If those were intended for them that I saw, I cannot agree to have them worked in, even if I have to lose them. They may not be as bad as I imagine, and you may make them do by fitting in pieces in the deficient places. I don't want them put up without having perfect corners to them. You will know whether they are of a sufficient size to look proportionate. I have just been measuring those in my portico, and will say that if I can get them 13⋈8 at the base, and a suitable diminish at top, that it will do, though I would rather have them 15⋈8, if they could be got of that size. I would like for you to have the outside ready for painting as soon as you could get it. I want Mr. Culver to do the outside painting, with the exception of the window-blinds, belfry-blinds, and the front doors. I want to get Mr. S. Adams to do these, also the pulpit, and all the inside painting. I hope he will be kind enough to instruct Mr. C. how to make up the first coat to fill up the rough outside, so that it will not take so much white-lead. I would get him to do the whole job, but I must economize, for I cannot raise money to pay full price for painting the whole job. I design buying my white-lead at Orleans, and sending it on at once after I get there."

The court admitted this letter in evidence, "for the single purpose of showing that the defendant was made the agent of plaintiff's intestate to determine upon the suitableness of the lumber for the work contemplated;" and also instructed the jury, in reference to it, "that they were not to regard said letter as establishing a new contract, but for the sole purpose of showing that the defendant was constituted Lea's agent to pass upon the suitableness of the lumber furnished;" to both of which rulings of the court the defendant excepted.

The other material facts, so far as they are necessary to a correct understanding of the legal points decided, are stated in the opinion of the court.

The errors assigned are, the rulings of the court on the evidence, and in the instructions to the jury.

ROBINSON & JONES, for the appellant.

WALKER, CABANISS & BRICKELL, *contra.*

RICE, C. J.—The contract for the breach of which this action was brought, is "a contract for the letting out and hiring of work by the great, or, as it is more commonly called, job or taskwork,"—a contract to build a church, the employer agreeing to furnish all the materials, "except the stone, &c., for the pillars," which the undertaker agreed to furnish.—Addison on Con. (edition of 1857,) 443. The employer was bound to do every thing that was necessary to be done on his part to enable the undertaker to execute his engagement and earn the hire or reward, (Addison on Contracts, 446;) and as no time was appointed for peformance on his part, he was bound to perform within a reasonable time.—*Ib.* 234. The undertaker was bound to enter upon his employment *without delay*, and to be active, industrious, careful, and diligent in the performance of the work; to do it according to orders given and assented to; to complete it within a reasonable period, if no precise time had been agreed upon for its fulfillment; and to exercise a reasonable amount of care and skill in its execution.—Addison on Contracts, 457, 458. And after the materials which the employer had agreed to furnish were delivered under the contract, and put under the control of the undertaker, the general law of bailment for hire regulated his liabilities as to them, and he was bound to take the same care of them that a prudent and cautious man ordinarily takes of his own property; to exercise all reasonable and ordinary forethought and precaution for their protection and preservation; and if a loss occurred from inundation, he must show that he had taken all such precautions as are ordinarily taken by prudent men to guard against the mischief.—Addison on Con. 459, 461.

In the present case, Lea (the plaintiff's intestate) was the employer, and Moore (the defendant) the undertaker. By the contract between them, Lea was to furnish all the materials, "except the stone, &c., for the pillars," which Moore agreed to furnish. Moore agreed "to have all the

work done *as soon as possible* after the materials " were furnished; and nothing was said in that contract as to the *quality* of the materials which Lea was to furnish. Evans was not a party to that contract. The evidence tends to show, that Lea made another and different contract with Evans and another, by which the latter agreed to furnish the lumber which Lea in his contract with Moore had agreed to furnish, and that the lumber should be of *good quality.* Moore was not a party to that contract. It is evident that the verdict and judgment in the present suit cannot be evidence *for* Evans in another suit, except to prove the mere fact of their rendition, for which purpose they would be evidence for every body; and, therefore, Evans is a competent witness for the plaintiff, under section 2302 of the Code, even if it were conceded that he was interested in the event of the suit. According to that section, interest in the event "goes to his credit only," but does not render him incompetent, "unless the verdict and judgment would be evidence for him in another suit "—that is, evidence for him to prove something beyond the mere fact of their rendition. They could not have been evidence *for* him here to that extent, because they could not have been evidence *against* him, to that extent, had they gone contrary.—Atwood v. Wright, 29 Ala. Rep. 346; Harris v. Plant & Co., at the present term.

[2.] There was evidence tending to show, that the lumber which Evans and another had agreed with Lea to furnish was delivered by them at the place contemplated by the contract between Lea and Moore—the place where the church was to be built; and that it was delivered in the winter of 1852. The defendant having proved by Evans, on cross examination, that he (the defendant) went to the church "about the first of April, 1853, with his work-benches and some workmen; and that he examined the timber or lumber on the ground, and found fault with some of it, because worm-eaten; the plaintiff then offered to prove, by said witness, that he then told defendant, that he had delivered more lumber than the bill furnished called for, and to go to work at it, and if it turned

out that there was not good timber enough for the job, he would furnish more, and that he should not be delayed in his work." To the introduction of what the witness told defendant, the defendant objected, but the court permitted it to go to the jury, and he excepted.

The defendant proved by a workman, that he and defendant "went to the church about the first of April, 1853, the time spoken of by Evans, with their benches and tools, *with a view of going to work;* and that they did not do so, because defendant examined the lumber, and pronounced much of it unsuitable for the job," &c. "The plaintiff, in rebutting, offered to prove, that the defendant, in the spring of 1853, undertook and erected a steam saw-mill in the neighborhood of Whitesburg, (the place where the church was to be built,) in which he was himself interested; but there was no further proof as to when he commenced or finished it, except that it was finished in the summer of 1853. The defendant objected to the testimony, but the court admitted it, and he excepted."

The plaintiff also offered to prove, " that while building said mill, and about the month of March, the defendant told witness, that as soon as he finished it, he would do the work on the church; to which the defendant objected, but the court admitted it, and he excepted."

The evidence embraced by these three exceptions, was admissible, at least, to repel the following inference, which might otherwise have been drawn from the defendant's evidence, to-wit, that the defendant was really ready and willing, at the time he and his workmen went to the church, to do the work on it, and that he would then have begun the work but for the unsuitableness of the lumber which had been furnished for the purpose. The plaintiff had the right to show, that the defendant was really not ready and willing; that he did not go to the church, with his workmen and benches, for the purpose of going to work there; that the benches and tools and workmen he had with him there, were really intended for use in erecting the steam saw-mill in the neighborhood; and that the pretense of the unsuitableness of the lumber, and of his

readiness to go to work there, was a false pretense, designed to cover up his foregone determination not to do the work on the church before he had finished the steam saw-mill, if he did it at all. And as the plaintiff had this right, we cannot say that the evidence embraced by the three exceptions now under consideration, was irrelevant or illegal, or that it was improperly admitted.—Malhuish v. Collier, 15 Ad. & El. (N. S.) 878; Rutherford v. McIvor, 21 Ala. 750; Watkins v. Gaston, 17 Ala. 665.

[3.] The opinion of Evans, who was the owner of a saw-mill in the neighborhood, and gave it his personal attention, and was a lumber-dealer, as to the quality of the lumber delivered by him for the job in controversy, was certainly good *in part*. The objection was to *the whole* of his opinion. As part of it, as offered, was admissible, there was no error in overruling the objection.

[4.] All the evidence is set forth in the bill of exceptions. As to the letter of Lea read in evidence by defendant, the court charged the jury, that they were not to regard the letter as establishing a new contract, but for the sole purpose of showing that the defendant was constituted his agent to pass upon the suitableness of the lumber furnished. To that charge the defendant excepted. The letter was written on the first of January, 1853. It does not appear that it was replied to, or acted upon by the defendant. It was written by the employer to the undertaker, not to relieve him from his obligation to take care of the lumber and do the work promptly, but rather to quicken his diligence. If any part of it can be construed into an admission of the unsuitableness of any part of the lumber, the admission cannot possibly go beyond " *the columns for the front ;* " and it is very clear that the unsuitableness of *those columns* could not, upon the evidence in this case, relieve the defendant from liability. But we think, the letter, fairly construed, does not amount even to an admission of the unsuitableness of those columns ; for, after speaking of them, he adds, " they may not be as bad as I *imagine*," &c. The letter directed the attention of the undertaker particularly to them, and authorized him, as agent for Lea, to pass upon

their suitableness, as well as upon the suitableness of the other portions of the lumber. But the agency created by the letter was not of such a character as to authorize the defendant, sustaining as he did the double relation of agent and undertaker, to create an excuse for his non-performance and neglect of duty *as undertaker*, by failing *as agent* to give notice to his principal and employer, within a reasonable time, that he had discovered or determined that the lumber was unsuitable. And upon that ground, and in view of the whole evidence, and especially of the statement in the bill of exceptions, that the defendant never did enter upon the work, but suffered the lumber to lie where it was delivered until the spring of 1854, and that there was no proof that Lea was ever informed that defendant objected to any portion of the lumber,—we are satisfied, that the defendant was not injured by the charge or any ruling of the court in relation to the letter. In other words, the court allowed the defendant all the benefit he was entitled to from it in this suit.

We think it clear that, upon the evidence, the court was right in charging that, "in order for the defective and unsuitable condition of the materials to be an excuse to the defendant for not performing his contract, he must show that he gave the plaintiff notice thereof within a reasonable time after the discovery of the quality of the lumber."—Story on Agency, 4th edition, § 208, and cases cited in note 1, on page 259.

The bill of exceptions states, that all the other charges excepted to, numbered from one to five inclusive, were given "in regard to the measure of damages." If that statement is not itself a full answer to the objection made to the charge numbered two, that it assumes that the plaintiff had complied with the contract on his part, the following is a satisfactory answer to that objection, to-wit, that even if that charge makes such assumption, it did not injure the defendant, for the conclusion of that very charge was, that upon the assumptions or facts therein stated, "the defendant was *not responsible*" for the lumber. We deem it unnecessary to go into any further argument or detail.

We have carefully examined the ingenious arguments of the learned counsel for the appellant, upon the several points made for reversal; and our conclusion is, that there is no reversible error in any of the rulings or charges of the court excepted to by appellant.

Judgment affirmed.