RUTHERFORD vs. McIVOR.

1. In assumpsit to recover money over-paid by plaintiff to defendant, the fact of the over-payment being contested, defendant may show plaintiff's inability to make it; and for this purpose, an unsatisfied mortgage previously executed by plaintiff is admissible evidence, as a circumstance the weight of which must be determined by the jury.

2. Also, a letter written by plaintiff to defendant after the alleged over-payment was made, showing that plaintiff was at that time pressed for money, and that he had had an interview with defendant the day before it was written, respecting a sum of money which defendant was liable to pay, and claiming from him that sum only, is admissible evidence for defendant; but *it seems*, that the letter would be inadmissible, if written before the alleged over-payment was made.

3. Money voluntarily paid, with full knowledge of the facts, cannot be recovered back; but having the means of ascertaining the real facts, is not tantamount to actual knowledge of them.

4. When money is paid under a mistake of fact, it may be recovered in assumpsit without a previous demand.

ERROR to the Circuit Court of Macon.

Tried before Hon. ROBERT DOUGHERTY.

ASSUMPSIT by the plaintiff in error against the defendant, as the surviving partner of the firm of McLester & McIvor, attorneys at law, to recover money alleged to have been over-paid to them by mistake.

It appeared on the trial, that McLester & McIvor, as attorneys at law, had charge of several executions in favor of the Branch Bank at Montgomery, against persons residing in Macon county, which executions the plaintiff, who was the sheriff of said county, had received for collection. The plaintiff proved that, in November, 1848, he paid to McLester, at Montgomery, the sum of $2250, for which he took receipts in their firm name, specifying that the money was paid on Bank cases, and was to be accounted for on settlement of the same. He also introduced his execution docket, and proved the receipts of McLester & McIvor opposite to each case entered therein, one of which receipts was in the hand-writing of McLester, and all the others in the hand-writing of McIvor. Of these receipts the first was dated

February 17, 1849, and the last in November, 1849. "The whole evidence," as the bill of exceptions states, "tended to prove that the plaintiff had advanced and overpaid to McLester & McIvor, over two thousand dollars more than he was liable to pay;" and he also introduced proof tending to show that McLester & McIvor had only paid to the Bank the amount to which it was entitled on the executions. It appeared that McLester died in March, 1850; and it was not shown that the overpayment was ever mentioned to him at all, or that it was mentioned to McIvor until a short time before the commencement of this suit, and after McLester's death.

The defendant offered in evidence a mortgage executed by plaintiff to one Williams in 1844, on several slaves, for about two thousand dollars, which mortgage did not appear to be satisfied. To this evidence the plaintiff objected, but the court overruled his objection, and admitted the evidence; to which he excepted.

The defendant also offered in evidence a letter written by the plaintiff to said McLester, dated October 17, 1849, of which the following is a copy:

"MY DEAR SIR: Not knowing the result of the future, when at your house on yesterday, I supposed I could wait longer for the amount spoken of, than I find I can, without considerable inconvenience, as I am compelled to advance eight hundred dollars in specie for John McKenzie. Will you, therefore, do me the favor, to authorize Mr. McIvor to pay the amount, $322 75, in Georgia or Carolina funds, of the execution against Strange & Self, together with the Supreme Court costs, which I have advanced, it being returnable to the last term of that court. I am, Sir, truly yours,

"T. V. RUTHERFORD."

The plaintiff objected to the introduction of this letter, but his objection was overruled, and he excepted. The bill of exceptions states that there was other evidence in the case, but does not set it out.

The court gave the following affirmative charges:

1. If the jury believe from the evidence that plaintiff, with a full knowledge of all the circumstances and facts, or with the means of acquiring such knowledge, voluntarily paid the money, he could not recover it back;

2. Plaintiff could not recover, unless he had demanded a settlement, or made a demand, before suit was brought.

The plaintiff excepted to each one of these charges, and he now assigns them for error, together with the admission of the evidence objected to.

N. W. COCKE, J. E. BELSER and D. CLOPTON, for plaintiff in error:

1. The evidence admitted, conducing to show Rutherford's embarrassments, was, under the state of the facts, wholly irrelevant, and should have been excluded.   12 Ala. 823; 10 ib. 355; 3 English's R. 491.

2. The letter of Rutherford to McLester was also irrelevant, and should not have been admitted.

3. In an action for money paid by mistake, no demand need be averred or proven.   Saunders on Pl. and Ev. 130; The Utica Bank v. Van Gieson and others, 18 Johns. 485; Hawley v. Sage, 15 Conn. 32.

4. To preclude the party, who has paid money under a mistake, from recovering it back, he must have paid it with a knowledge that it was not due; the mere means of knowledge is not sufficient.   Chitty on Cont. 543-4, notes, and cases cited, (Edition 1851;) Browne on Actions at Law 378; 2 Smith's Lead. Cases 328, top, (2d Amer. Edition;) 1 Mood. & Rob. 293; 9 Mees. & Welsby 54; 4 Man. & Grang. 16; 8 Cowen 195; 1 Ala. 406; 5 ib. 292; 20 Wend. 174; 3 Shep. 108; 17 Ala. 262; 2 Denio 107; 1 Wend. 355.

5. No question is presented by the record growing out of the relation of McLester and McIvor, as attorneys of the Bank; if it were, the money overpaid can in no sense be considered the money of the Bank; nor can it be presumed that it was ever paid to the Bank.   3 Kelly's R. 90; 19 Conn. 550; 10 Peters 138; 9 Mass. 408; 3 M. & S. 348; Weeks v. Love, adm'r. 19 Ala. 25; 5 ib. 292.

RICE & MORGAN, contra:

1. There was no error in the admission of the evidence objected to by the plaintiff.   The fact of the over-payment of $2000, which the plaintiff alleged, being contested and denied, the defendant had the right to give in evidence any-

Rutherford v. McIvor.

thing that would show it to be impossible or improbable; any thing that could throw suspicion on plaintiff's evidence; for, the most positive testimony may be overcome by circumstances of suspicion. 1 Gallison's R. 104; 2 McCord's R. 161; 2 U. S. Digest, 286, § 1877, 1878. The mortgage was admissible, to show that plaintiff's situation was such that he could not have paid out so large a sum of money without full knowledge. The letter was admissible for several reasons. It was written long after the alleged over-payment was made; it shows that the plaintiff was then pressed for money, that he had immediate use for $800, and yet that he only claimed $322 75 from McLester, as security for Strange.

2. Where money is voluntarily paid by a sheriff to attorneys at law, " on account of sundry fi. fa's in his hands," in favor of the attorneys' client, with a full knowledge of all the facts and circumstances, or with the means of acquiring such knowledge, he cannot recover it back from the attorneys. Peterborough v. Lancaster, 14 New Hamp. 382; West v. Houston, 4 Har. 170; 2 East's R. 470, cited and approved in 1 Ala. 406; 8 Iredell's Law R. 243; ib. 441; 9 Cowen's R. 674; 2 Robinson's (Va.) R. 664; 11 Ad. & El. 926; 4 Burr. 1984; 3 Barn. & Adol. 354; 4 Term R. 554; 5 English, 469. If this proposition is not universally true, it is certainly true when applied to the facts of this case. If the money was received by the attorneys, it was received for the Bank, and they are liable to the Bank for it. Weston v. Barker, 12 Johns. 276; 7 Har. & John. 157. The sheriff voluntarily made the payment, in advance, " on sundry fi. fa's in his hands," in favor of the Bank. The attorneys are liable to the Bank for the amount thus received, whether or not the sheriff ever collects anything on the executions; and a recovery against them in this suit, and satisfaction thereof, would not protect them from liability to the Bank. 11 Ala. 695; 7 ib. 308. It is not pretended that all the Bank executions in the hands of the sheriff, solvent as well as insolvent, have been collected, and the payment was made generally. It is certain that Rutherford cannot recover for an over-payment, when he fails to show that all the executions in his hands have been paid. By his voluntary payment, he has placed the attorneys in a situation of actual liability to

the Bank; and this estops him from a recovery against them. 11 Adol. & El. 926; 4 Term R. 554; 4 Burr. 1984.

3. The sheriff has no right to *advance* money on an execution in his hands to the plaintiff or his attorney. Such an advance would give him a personal interest in the executions, which he holds as an officer. It is against public policy and unlawful, to allow him to engage in any such traffic; "and no right can be derived from an unlawful act." Fambro v. Gantt, 12 Ala. 298; Rutland v. Pippin, 7 ib. 469; Roundtree v. Weaver, 8 ib. 315; Crutchfield v. Haynes, 14 ib. 49; Johnson v. McLaughlin, 9 ib. 551; 8 Humph. 288; 2 McCord, 470; 3 A. K. Marsh. 536; 4 Comstock's R. 449; 4 Wash. C. C. 297; 4 Denio, 63. Even where the sheriff pays an execution, in discharge of an official liability incurred by himself, he cannot recover the amount from the defendant, whose debt he has thus paid, unless the latter authorized the payment, or adopts it. The mere payment, *per se*, does not render the defendant liable to him. 13 Ala. 357. How then can a mere voluntary payment in advance by the sheriff, on executions in his hands, to the plaintiff's attorneys, authorize a recovery by him against them? Kenan v. Holloway, 16 Ala. 57.

4. In all such cases as this, the means of acquiring knowledge is regarded in law as actual knowledge. The law will not permit a man "to shut his eyes, and remain voluntarily in ignorance of facts within his reach," and then claim its protection against the consequences of such ignorance. Want of notice of a fact, which is the result of the lack of that diligence which the law requires for its ascertainment, furnishes no ground for protection, even in a court of chancery. Chapman v. Glassel, 13 Ala. 55; Jenkins v. Eldridge, 3 Story's R. 181, 297; Randall v. The State, 4 Sm. & M. 351; 4 New Hamp. 382; 4 Har. 170; 6 Peters, 622; 9 Ala. 208.

5. If the plaintiff had any right at all to recover, he certainly could not sue until he had made a demand. Wellborn v. Sheppard, 5 Ala. 674; Stewart v. Frazier, ib. 114; 14 New Hamp. 352; 15 Maine, 327.

DARGAN, C. J.—We cannot perceive that the court erred in admitting the testimony to which the plaintiff objected.

The mortgage from the plaintiff to Williams, it is true, has no connection with this case; and if there had been no contest as to the fact of an over-payment, the mortgage would have been entirely irrelevant. But the material inquiry was, whether an over-payment had been in fact made. This was the contested matter of fact, and we think that the defendant may show the inability of the plaintiff to make it; and if he can, of course, every circumstance tending to prove such inability may go to the jury, without regard to the weight or influence that may be attached to it. They are to judge of such circumstance; and although it may amount to little, or even nothing, in their estimation, yet, as it has a tendency to prove a fact that is admissible, we cannot say that the court erred in admitting it.

In reference to the letter written by the plaintiff to McLester, we think it was also admissible. When a plaintiff has introduced evidence tending to prove a material fact, it is certainly competent for the defendant to give in evidence any fact that will impeach or impair the weight of the evidence thus introduced against him, or that will render the truth of the material fact more doubtful. This rule of evidence, we think, rendered the letter admissible; for we must infer from the bill of exceptions, that the over-payment, if made at all, was made before the letter was written, and it shows that the plaintiff was pressed for money; and also, that, on the day before it was written, the plaintiff and McLester had had an interview, respecting a sum of money which McLester was liable to pay, and yet the plaintiff claimed of him only $322 75. This, of course, is a circumstance tending to prove that, at the time the letter was written, the plaintiff did not know of the mistake; and his being embarrassed in pecuniary matters, and not having discovered the mistake for some time after the over-payment was made, is a circumstance that may go to the jury, to be by them considered in determining whether the mistake was in fact made. It is true, that the over-payment may have been in fact made, and it may not have then been discovered; and if this were the case, then the letter could have no influence with the jury. Yet, in deciding whether the over-payment was made, they may take into consideration the circumstance that the

mistake was not discovered for a considerable time after it was made. The importance, however, to be attached to that circumstance is exclusively for them.

We have said, that we were bound to infer from the bill of exceptions that the over-payment, if made at all, was made before the letter was written; and we deem it proper to add, that if, in point of fact, the over-payment was not made before the letter was written, then the letter ought not to be allowed to go to the jury, because, in that aspect of the case, it could tend to prove no legitimate fact or circumstance.

As respects the instructions given by the court to the jury, we do not think they can be sustained as correct expositions of the law. All the authorities agree in this, that if one pay money voluntarily, with a full knowledge of all the facts, he cannot recover it back. I might refer to any number of cases, to show this to be the rule; but I deem it unnecessary, for none of the cases controvert it. But I cannot yield my assent to the proposition, that the means of ascertaining the real facts of the case are tantamount to actual knowledge of them. If this were the rule, then it would be but rare that money paid by mistake could ever be recovered back. For instance; if, in the settlement of an account, a mistake in the calculation was made, it could not be afterwards corrected by suit, because the parties, having competent knowledge of figures, had the means of knowledge; and the mistake being the result of negligence, rather than the want of knowledge, the parties would be bound to abide by it.. The recent and best authorities, I think, settle the rule otherwise.

In the case of Kelly v. Solari, 9 Mees. & W. 53, the facts were these: The defendant's testator had effected an insurance upon his life, but by mistake had failed to pay the last quarterly premium falling due before his death. This was made known to two of the directors of the Insurance Company, and one of them wrote on the policy the word "lapsed." After the death of the testator, his executor applied for the money; and the directors who had been informed that the policy had lapsed, together with another director, who had not been informed of it, paid the money; and the suit was afterwards brought by the company, to recover it back. On the trial, the two directors who knew all the facts swore, that,

at the time the money was paid, they had forgotten that the policy had lapsed. Upon these facts, the Chief Baron who presided at the trial, instructed the jury, and directed a non-suit, with leave to move for a new trial. The motion was heard before the Court of Exchequer, and in delivering his opinion the Chief Baron said: "I certainly laid down the law too broadly to the jury, when I said, that, if the directors once knew the facts, they must be taken still to know them, and could not recover by saying that they had forgotten them. I think the knowledge that will disentitle a party from recovering must mean, a knowledge existing in the mind at the time of the payment." In this opinion the whole court concurred, and the rule for a new trial was made absolute.

The same rule is recognized in the case of Lucas v. Worswick, 1 Moo. & Rob. 293; and in the case of Waite v. Leggett, 8 Cowen, 195, the Supreme Court of New York held, that, to deprive a party of the right to recover back money paid, on the ground of his knowledge that it was not due, it should appear that the money was paid with a knowledge that it was not due; and the fact that the party had the means of knowing that the money was not due, was no answer to the action, provided there was a mistake of fact in the payment.

These decisions, in my judgment, announce the correct rule; and although decisions may be found which indicate a different rule, and that the means of ascertaining the real facts are tantamount to a knowledge of them, yet I cannot yield to them, and I can but think that they are in conflict with the law; for, on examining the cases in which a recovery has been allowed on the ground of a mistake, I will undertake to say, that, in a large majority of them, the party paying had the means within his reach to ascertain the true facts of the case. The court erred in instructing the jury, that, if the plaintiff had the means of knowledge, he could not recover.

The second charge, we think, was also erroneous. When money is paid in consequence of a mistake of fact, the party receiving it is liable for it, as for money had and received for the use of the party who paid it. It is immediately due, and

the bringing of the action is a sufficient demand; or rather, no demand need be made before the suit is brought, to entitle the party to a recovery. See the cases of The Utica Bank v. Van Gieson, 18 Johns. 485, and Hawley v. Sage, 15 Conn. 52.

For the errors in the instructions of the court to the jury, the judgment must be reversed, and the cause remanded.

NOTE.—This opinion was prepared by the late Chief Justice before his resignation. The court, in its present organization, having fully examined and sanctioned it, LIGON, J., delivered it as the opinion of the court.

CHILTON, C. J., did not sit.