## CHARLES I. WALKER v. MARIA S. CONANT.

[See 65 Mich. 194.]

*Payment—Mistake.*

| 69 | 321 |
| 96 | 360 |
| 69 | 321 |
| s87NW | 292 |
| 129 | 197 |
| 129 | 198 |

Where money is received in good faith, and in the ordinary course of business, and for a valuable consideration, it cannot be recovered back because it was fraudulently obtained of some other person by the payor.

So *held*, where a son secured a loan on a forged mortgage upon his father's land, and afterwards secured a second loan upon the same property by a second forgery, and by his direction the second mortgagee paid the first mortgagee, out of the loan, the amount due on her mortgage, which she surrendered and discharged, both mortgagees being innocent in the transactions, and on a discovery of the facts the second mortgagee brings suit to recover the money so paid.

Error to Monroe. (Joslin, J.) Argued February 1 and 2, 1888. Decided April 13, 1888.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*O. A. Critchett*, for appellant.

*Geo. M. Landon* (*Ira R. Grosvenor*, of counsel), for defendant.

MORSE, J. This cause was before this Court upon the pleadings in the January term, 1887, and we then overruled the demurrer to the special count of the declaration, and held that there were facts enough stated in such count to permit a recovery if no defense were made. It was there stated (see opinion, 65 Mich. 197, 31 N. W. Rep. 787) that, as a general rule, money paid under a mistake of material

facts may be recovered back, although there was negligence upon the part of the person making the payment, but that the rule was subject to the qualification that the payment cannot be recalled when the situation of the party receiving the money has been changed in consequence of the payment, and it would be inequitable to allow a recovery. The person making the payment must in such case bear the loss occasioned by his own negligence.

The case has been since tried in the court below, and a verdict directed for the defendant.

In this Court there is no controversy about the facts, and the only question to be determined is, what should have been the judgment in the court below upon such facts?

Briefly, the case is this:

On or about the twentieth day of December, 1883, one Edgar Van Riper obtained from the defendant, Maria S. Conant, a loan of $1,000. The negotiations for the loan were made with one James Armitage, who was acting as the agent of Mrs. Conant. The loan was secured by a note and mortgage, payable in five years, purporting to be executed by Henry Van Riper (the father of Edgar); the mortgage also being signed by his wife, apparently. It was upon 160 acres of land, of the value of at least $8,000, owned by Henry Van Riper, and situated near Flat Rock, in the county of Wayne, in this State. This note and mortgage were forged, and were never executed by the elder Van Riper, or his wife, nor by any person to their knowledge, or by their consent or authority.

Armitage and Mrs. Conant both supposed the securities to be genuine.

While this mortgage was upon the record in the register's office of Wayne county, and in January, 1885, this same Edgar Van Riper applied to the firm of Walker & Walker, attorneys at Detroit, for a loan for his father, Henry Van Riper, of $3,000, and offered security by mortgage upon the

same premises covered by the Conant mortgage, which was then unpaid. ›

E. C. Walker, of Walker & Walker, and a brother of the plaintiff, conducted all the negotiations with Edgar Van Riper. He never saw him before, and has never seen Henry Van Riper or his wife, or had any negotiations with either of them. He consented to loan the money if the proper abstracts of title were furnished, and a first mortgage given upon the land. Edgar stated to Walker that James Armitage, of Monroe, held a mortgage for $1,000 upon the premises, which Armitage would release upon payment, and that he wished such mortgage to be paid out of the $3,000 to be borrowed of Walker. Walker then wrote to Armitage as follows:

"DETROIT, January 21, 1885.

"JAMES ARMITAGE, ESQ.,
      "Monroe, Mich.

"Dear Sir: I have agreed to loan Mr. Van Riper, of Flat Rock, some money on his 160-acre farm. He says you have a mortgage of a thousand dollars on it, which you will let him pay. If you will trust me with all the papers, abstract, etc., and a discharge of the mortgage, I will remit the amount due you in a draft on Detroit or New York, as you prefer.       Very truly yours,

"E. C. WALKER.

"P. S. What do you think the farm worth?
      "E. C. W."

Edgar Van Riper also wrote at the same time the following letter:

"DETROIT, January 21, 1885.

"J. ARMITAGE.

"Dear Sir: I am here to-day, and can get the money for father, of E. C. Walker, of Walker & Walker, 18 Moffat building. He says he is acquainted with you, and says he thinks you will be willing to send all your papers and discharge to him, and he can deposit the money for you, or send it to you. Will you please to send amount of all interest and charges and the trouble, and so I can pay it at the

same time, and oblige? If this is not satisfactory, please write me as soon as possible, at home, and oblige.

"ED. VAN RIPER,

"Flat Rock, Michigan."

Armitage replied to Walker as follows:

"MONROE, MICH., January 22, 1885.

"Note, December 20, 1883_____$1,000.00
Interest_____    83.20
Charges_____     5.00
                                                 ----------
                                                 $1,088.20

"MESSRS. WALKER & WALKER,

"18 Moffat Building, Detroit, Mich.—

"*Gentlemen :* Inclosed please find note and mortgage of Henry H. Van Riper and Lydia A. Van Riper for ($1,000) one thousand dollars, dated December 20, 1883, to Maria S. Conant; also release of same upon his paying you for me one thousand and eighty-eight and 20-100 dollars ($1,088.20), which you will please deposit in the Detroit National Bank, Detroit, Michigan, for my acc. Your kind letter of the twenty-first is duly at hand, saying that, if I will intrust all papers to you, you will see that all is made right, and deposit the money in Detroit National Bank, Detroit. I inclose you the papers in full. I am not acquainted with this farm, but it is said to be valuable. Ed. Van Riper says it is worth ($10,000) ten thousand dollars; so I understood him.

"Yours very respectfully,

"JAMES ARMITAGE, Monroe, Michigan."

It is admitted that Armitage was still the agent of Mrs. Conant, and authorized to act for her.

Upon receiving this letter from Armitage, and the papers therein contained, Walker drew a bond and mortgage for $3,000 from Henry Van Riper and wife to one Helen M. Dudley, and gave them to Edgar Van Riper to have them executed, who brought them back, apparently signed by Henry Van Riper and wife, and purporting to be properly witnessed and acknowledged by John L. Near, a notary public, residing at Flat Rock, and personally well known to Walker.

The title of Henry Van Riper being clear to the premises, Walker accepted the bond and mortgage. He drew the check

of Walker & Walker for $1,088 and some cents,—the amount then apparently due upon the Conant mortgage,—and deposited the same to the credit of Armitage in the Detroit National Bank. He paid the balance of the $3,000, less his commission, to Edgar Van Riper in money at his office. Edgar told E. C. Walker to pay the mortgage to Conant out of the $3,000, and it was understood it should be paid in the manner it was paid.

Walker then wrote Armitage as follows:

"DETROIT, January 26, 1885.
"JAMES ARMITAGE, ESQ.,
          "Monroe, Mich.
  "*Dear Sir:* I this day deposit to your credit, at the Detroit National Bank, $1,088.20, as per yours of the twenty-second inst.          Very truly yours,
                              "E. C. WALKER."

To which Armitage replied:

"MONROE, MICH., January 27, 1885.
"E. C. WALKER, ESQ.,
  "18 Moffatt Block, Detroit, Mich.
  "*Dear Sir:* Yours of the twenty-sixth is at hand, saying you had deposited in the Detroit National Bank $1,088.20, from H. H. Van Riper, for my account. With thanks,
                    "Very respectfully,
                          "JAMES ARMITAGE."

The land covered by these two mortgages is situated some 15 or 20 miles from Detroit. The bond and mortgage taken in the name of Helen M. Dudley was, immediately after its execution, assigned to the plaintiff by E. C. Walker, he being authorized by power of attorney to execute it. The money loaned by Walker & Walker, and secured by this mortgage, belonged to the plaintiff, and E. C. Walker was acting as his agent in making the loan. E. C. Walker consulted the plaintiff before concluding the loan, and the plaintiff consented to it. At the time the bond and mortgage were offered to E. C. Walker, he took no steps to ascertain whether they were genuine or not, taking it for granted that they were

all right; nor did he inquire into the authority of the son to act for his father, but acted upon the presumption that he had such authority.

The bond and mortgage proved to be a forgery; but the plaintiff did not ascertain that fact until in the spring and summer of 1886, when he wrote to Henry Van Riper for payment of interest.

Upon the receipt of this demand for interest from plaintiff, and upon an examination of the records consequent thereon, Henry Van Riper first became acquainted with the fact of the execution of this mortgage, and the prior execution and discharge of the Conant mortgage. The mortgage and note to Mrs. Conant are probably lost or destroyed, as Edgar Van Riper testified he did not have them, and did not remember taking them from E. C. Walker. Walker did not have them at the time of the trial, and was pretty certain he delivered them to Elgar. The truth is, no doubt, that he handed them over to Edgar, and he destroyed them, as they were evidences of his crime.

It appears, and is conceded upon both sides, that the plaintiff and defendant are equally innocent in this transaction.

Both mortgages were taken by agents, who were negligent in ascertaining the genuineness of their securities, and the authority of Edgar to act for his father, and in his behalf, in making the loans. So far the parties seem to stand upon an equal footing. Both were duped by the younger Van Riper because of a want of sufficient caution upon the part of their agents. One of them must necessarily suffer.

But by no act of Mrs. Conant has the plaintiff been put in any worse condition than he would have been had she not been concerned in the transaction; while by the act of the plaintiff's agent in delivering her note and mortgage to Edgar she has been damnified to some extent,—how much cannot be told,—if she has to lose the money paid to her.

I think the money paid to Mrs. Conant, and represented

by her note and mortgage, was in reality paid to her or her agent by Edgar Van Riper,—the man who borrowed or obtained it from her, and who honestly owed it to her,—and not by the plaintiff or his agent. The depositing of the check in the bank by E. C. Walker was a payment made at the request of Van Riper, and by his direction. It is true, it was so placed at the direction of Mrs. Conant's agent, as the manner of payment; but the payment itself was directed by Van Riper, who told E. C. Walker, when he negotiated the loan, that he wanted to pay the Conant mortgage, and one of the objects of makin the Walker loan was to obtain funds to pay the debt to Mrs. Conant, as is shown by Van Riper's letter to Armitage, and the method of such proposed payment is also stated in that letter.

Stripped of all sophistry, the naked case is this: Van Riper obtains $3,000 of the plaintiff upon a forged mortgage, and, out of the money so obtained, pays Mrs. Conant the debt he owes her, which is evidenced by a forged note, and secured by a forged mortgage upon the same premises described in the mortgage to plaintiff. The money is honestly her due, and she has an equitable right to demand and receive it of Edgar; and, believing her securities to be genuine and valid, she takes the money, and surrenders them up to him to be canceled and destroyed, and in utter ignorance of the fraud perpetrated upon the plaintiff by Van Riper.

It is the same, in fact and in legal effect, in my opinion, as if the $3,000 had been paid direct to Van Riper by Walker, and he had taken the money away, and out of it afterwards paid the debt to Mrs. Conant, and received the note and mortgage direct from her hands.

In such case, it seems to me, under all the authorities, that the fact that the plaintiff or his agent supposed his bond and mortgage to be genuine, and the Conant mortgage to be a valid lien upon the premises, cuts no figure in the case. It is not a case where he has purchased the Conant mortgage as

an investment, believing it to be valid. It is not a case where he has parted with his money, and received a void security which he would not have bought had he known it to be false and forged. But in the present case he was loaning the $3,000 upon an $8,000 farm, and, as he supposed, upon good security. This was the main and absorbing transaction. The payment and discharge of the Conant mortgage was but an incident of his dealing. If the mortgage had not been in existence, Van Riper would have obtained the same sum, $3,000, upon the bond and mortgaze delivered to E. C. Walker. Being in existence, and preventing, until discharged, a first mortgage upon the premises, Walker stipulated that this mortgage should be released out of the funds paid by him to Van Riper upon the loan.

Walker would have been equally satisfied, no doubt, if Van Riper had paid the Conant mortgage before receiving any money upon the mortgage executed to Helen M. Dudley, and assigned to plaintiff, or if he had taken the money after it was paid to him and procured the release of Mrs. Conant. The plaintiff was not buying or paying off the Conant mortgage; he was loaning $3,000 to Van Riper's father, as he supposed, upon good security.

But Mrs. Conant would not have parted with her securities without the payment of the debt, and, if this money can be recovered, back from her by the plaintiff, her situation is changed, and without her fault, beyond all possible return or restoration.

Her note and mortgage have been destroyed by the joint action of Van Riper and the plaintiff's agent, and cannot be returned to her. She has therefore lost the power that the possession of these papers might have given her in the collection of her debt, and it is therefore most inequitable to hold that she shall not only lose her debt, but also the evidences of it (false though they may be as against the elder Van Riper), for the benefit of the plaintiff, who has been equally negli-

gent with her in making these loans, and through whose negligence, and with no fault of hers, she has lost her note and mortgage beyond recall, which note and mortgage she would not have surrendered except upon the payment of her debt.

A reference to the opinion filed when the case was here before, and the authorities there cited, is sufficient to show that, under the case as now made, the plaintiff cannot recover.

He must bear the consequences of his own negligence, as the situation of Mrs. Conant has been changed by his acts so that in equity she cannot be asked to return the money. She received it in good faith, in satisfaction of a just and equitable claim, and when it was due on honor and in conscience. *Walker v. Conant,* 65 Mich. 197, 198 (31 N. W. Rep. 787, 788).

And the authorities are uniform that where the money is received in good faith, and in the ordinary course of business, and for a valuable consideration, it cannot be recovered back because the money was fraudulently obtained of some other person by the payor.

To hold otherwise would be to put every man who receives money in the due course of his business upon inquiry, at his peril, as to the manner in which such money was procured by the payor. *Justh v. Bank,* 56 N. Y. 484; *Mason v. Waite,* 17 Mass. 563; *Warren v. Haight,* 65 N. Y. 171, 178; *Reed v. Bank,* 6 Paige, 337; *Currie v. Misa,* 12 Moak, Eng. R. 592, 605; *Watson v. Russell,* 31 L. J. Q. B. 304; *Rapalje v. Emory,* 2 Dall. 51, 54; *Stevens v. Board, etc.,* 79 N. Y. 183.

The judgment should be affirmed, with costs.

CHAMPLIN and LONG, JJ., concurred with MORSE, J.

SHERWOOD, C. J. (*dissenting*). I cannot concur in the result arrived at by my Brother MORSE in this case, nor in the reasoning by which it is reached.

One Van Riper obtained a loan of Mrs. Conant, the defend-

ant, of $1,000 upon a forged note and mortgage against his father and mother, purporting to have been given by them to her upon their farm in Wayne county, worth about $8,000; and in about a year thereafter Van Riper obtained a loan of $3,000 upon a bond and mortgage, forged, against his father and mother, of the plaintiff, Mr. Walker, and in concluding the business an arrangement was made between Van Riper, Mrs. Conant, and the plaintiff by which the latter was to pay Mrs. Conant upon her mortgage the amount thereof, and she was then to discharge the same of record. Such payment was made by Mr. Walker to Mrs. Conant, and she executed and delivered to him the discharge, and the amount thus paid constituted a part of the plaintiff's loan to Van Riper of the $3,000.

The forgery of these securities was not known to either Mr. Walker or Mrs. Conant until a year or more after the transaction. The business between the parties was done by their agents.

Mr. Walker's claim in this case is that he made the payment to Mrs. Conant to obtain a release of the forged mortgage, under the supposition by both parties that it was genuine and valid, and he is therefore entitled to have the money he paid to her, back. Of course, Mr. Walker had no interest in the payment of Mrs. Conant's claim against the forger, Van Riper, which was undoubtedly *bona fide;* but he was interested in having a first mortgage upon the property for the loan of his money, and made the arrangement with Mrs. Conant to release her mortgage upon receiving payment thereof from him, and which was to be credited to him upon the amount of his loan to Van Riper, by arrangement between them.

Mrs. Conant, by releasing her mortgage, did not release her debt against Van Riper. Her claim still remains as good as it ever was against him. Mr. Walker never received anything from her, or any one else, for the money he let her

have. The mortgage she discharged was the only thing she parted with for it, and that was worthless and void. Under such circumstances, to permit Mrs. Conant to withhold the money she received from Mr. Walker would not only be inequitable and unjust, but would be allowing her to reap the fruits of the crime committed by young Van Riper. Upon the conceded facts, there is no question of negligence between these parties in the case.

It is said by my Brother MORSE, in regard to Mrs. Conant's giving up her note and mortgage:

"Her situation is changed, and without her fault, beyond all possible return or restoration."

If by this it is meant she has given up for destruction a forged note and mortgage which she received for a loan of money made, it is true; but if by it is meant that her legal or equitable rights are changed, in the event she is obliged to return the money she received of Mr. Walker, I confess my inability to discover such change. She certainly never had any right, legal or equitable, to have this money of Mr. Walker, unless a forged note and mortgage can be regarded as legal; neither were they of any validity or value to her when they were in existence, and in her hands. She had a valid claim against Van Riper, the forger, but never had one against the plaintiff, or any one else; and when he paid the money to her it was under a mutual mistake of facts.

To hold such a payment valid, and give the payee the benefit of the same, would be unjust and inequitable, and I can never consent to a judgment which will allow the felonious transactions of a criminal to have the effect and be governed by the same rules which regulate the good-faith dealings and transactions of honest people. I know it is said that she has lost her note and mortgage, and—

"Has therefore lost the power that the possession of these papers might have given her in the collection of her debt; and it is therefore most inequitable to hold that she shall not

only lose her debt, but also the evidences of it (false though they may be as against the elder Van Riper), for the benefit of the plaintiff; * * * and that she would not have surrendered the mortgage but for the payment made."

It is a little difficult to see how the possession of these forged papers, under the circumstances, could have aided her in the collection of her debt. The forging does not appear to be questioned by any one. It is conceded by the parties, and the evidence to prove it remains entirely sufficient. If these void papers could have given her any aid in making collection against the insolvent forger, it does not appear in the record, and I know of no reason which suggests it. The fact that the defendant would not give the release of her mortgage until she was paid the amount it called for was the very reason why Mr. Walker made the payment he did to her. Upon the claim thus made, I can find no facts upon which to base the claimed injustice in requiring a return of the money to Mr. Walker. The rights of no other parties have intervened or are involved in the case. No *bona fide* rights of other innocent persons are to be protected.

Under the circumstances stated in the record, the money sued for in the possession of Mrs. Conant was Mr. Walker's money. She received it of him without any consideration whatever, and upon an unquestionable mistake of facts, for the existence of which neither party was in fault or to blame; and to hold otherwise I can but regard as a misapplication of the equitable principles governing the rights of these parties, and which are applicable to the case.

The judgment should be reversed, with costs, and a new trial granted.