# Russell, *et al. v.* Richard & Thalheimer.

## *Assumpsit.*

(Decided Nov. 21, 1912.  Rehearing denied Dec. 7, 1912.
60 South. 411.)

1. *Payment; Recovery; Mistake of Fact.*—One paying money to
another under a mistake of material fact may recover it in as-
sumpsit either for money had and received, money loaned or money
paid.

2. *Same.*—To defeat a recovery for money paid by mistake of a
material fact, it is not sufficient to show or allege that plaintiff had
the means of obtaining the requisite knowledge, when he had no
actual knowledge of the fact, or the falsity of the supposed fact.

3. *Same.*—The evidence examined, and it is held that under it,
the payment to the defendant was a payment by a swindler and
not by the plaintiff, and plaintiff could not recover from the defend-
ant on the theory of a payment under a mistake of fact.

4. *Same; Obstruction.*—Where the evidence showed that the
money paid the defendant was paid by an attorney acting as the
attorney for a third party as borrower, and not acting for the
plaintiff, defendant was entitled to an instruction directing a re-
covery for him on the finding by the jury that such was the fact, or

on finding the plaintiff guilty of negligence in not discovering the fraud of the third person and in not notifying the defendant thereof and demanding the return of the money.

APPEAL from Selma City Court.

Heard before Hon. J. W. MABRY.

Action by Richard & Thalheimer against R. R. Kornegay, revived on defendant's death in the name of his executors. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The following charges were refused the defendant: "If you believe from the evidence that, in paying the money to defendant, J. L. Bishop paid it in cash, and was acting for the person Jim Gardner, who called himself Taylor Parkman, and not for plaintiffs' and that said money was paid and received in full payment and satisfaction of a claim of defendant against said Jim Gardner, and for money lent said Jim Gardner by defendant, without knowledge or notice by the defendant, at the time he received said money, that said Gardner had forged any papers to secure the money from plaintiffs, or had perpetrated any other fraud upon plaintiffs, and the defendant received said money in good faith, in full payment and discharge of said claim, then you cannot find for the plaintiffs." (5) "If you believe from the evidence that defendant received the money paid him in full payment and satisfaction of a claim he had, if you believe he had such claim against Jim Gardner for money lent him, and surrendered up to said Gardner two notes and a mortgage, and if you further believe that he was led to believe, and did believe that, for a period of time between the time of said payment and some time in December, 1909, his said claim had been fully paid up and satisfied, and induced by said belief he forbore during all of said time to attempt to collect or prosecute his claim, you cannot find for the plain-

tiffs." (6) "If you believe from the evidence that the plaintiffs were negligent in failing to discover the fraud practiced upon them within a reasonable time, or failed within a reasonable time after the discovery to notify defendant and demand the return of the money so paid, you must find the issues for the defendant."

REESE & REESE, and DANIEL PARTRIDGE, JR., for appellant. One receiving money for value in good faith is not bound to inquire whence it came, but may assume good title in the payor, and his right to the use of the money.—1 Burroughs, 452; Cowper, 197; *M. & M. R. R. Co. v. Felrath,* 67 Ala. 189, 56 N. Y. 478; 35 Am. Rep. 511; 141 N. Y. 379; 34 Mass. 159; 48 Mo. 344; 49 South. 593; 104 Fed. 214. A principal cannot recover for money misapplied by an agent even if the misapplication be a felony, if the person receiving the money took it for value in good faith and without notice of the agency.—Authorities supra. A receiver for value in good faith includes one who receives the money in payment of a debt, or under such circumstances that in equity and good conscience he has a valid and legally enforcible claim against the payor.—*Ala. Nat. Bank v. Rivers,* 116 Ala. 1; *Gardner v. Allen,* 6 Ala. 87; 165 Fed. 428; 133 S. W. 731; 16 South. 317; 114 S. W. 759. On these authorities it is insisted that the court was in error in its rulings on the evidence, and in refusing to give the charges requested.

PETTUS, FULLER & LAPSLEY, for appellee. The general rules of law governing this case and others for the recovery of money paid under a mistake of fact will be found in the following cases.—*Young v. Lehman-Durr & Co.,* 63 Ala. 519, and authorities there cited. The rule does not forbid the recovery back of money voluntarily

paid under a mistake of material fact.—*Hunt v. Matthews*, 132 Ala. 286. Although a person has the means at hand of obtaining the requisite knowledge, this is not sufficient to defeat a recovery for money paid by mistake where the plaintiff had no actual knowledge of the fact itself.—*Rutherford v. McKeever*, 21 Ala. 750; *Hathaway v. Delaware County*, 78 N. E. 153; *Strauss v. Hensey*, Court of Appeals of D. C., 7th vol. 789. Counsel criticise the cases cited by appellant, and insist that they are without application.

PELHAM, J.—This appeal was prosecuted from a judgment, rendered against him, by R. R. Kornegay, since deceased, and was revived under the rules, while pending on appeal in this court, in the name of the executors of Kornegay. Suit was originally instituted by the appellees as the plaintiffs in the trial court against said Kornegay as the defendant, and we will refer to the parties in this relation respectively as plaintiffs and defendant, to prevent confusion and for the sake of brevity, in our opinion.

The case presented will be sufficiently understood, so far as the questions before us for review are affected, by a statement of the facts that follow. An imposter and swindler, whose name afterwards appeared to be Jim Gardner, represented himself to be another person, by name, Taylor Parkman, and by simulating the name and representing himself to be Parkman, obtained from the defendant a loan of $500 by offering to secure the loan on a certain lot in the city of Selma, Ala., owned by the said Parkman. The swindler executed notes and a mortgage on the property to secure the sum borrowed in the name of Taylor Parkman. This transaction took place in November, 1905. In November, 1908, and shortly after the maturity of the notes given

to the defendant in 1905 for the $500 loan, the same swindler, simulating the same person and offering the same property as security, engaged in a similar scheme of fraud and deception to that he had previously successfully practiced on the defendant, but this time for a larger sum or amount of money; the plaintiffs in this action on this latter occasion being the victims of the fraud practiced. In the latter transaction, in which the imposter practiced the fraud on the plaintiffs and procured from them $850, the $500 previously obtained by this swindler from the defendant was repaid to him under circumstances which we will subsequently state in substance from the evidence as we understand it as set out in the bill of exceptions.

It appears without dispute or conflict of any kind, and is conceded, that neither the plaintiffs nor the defendant knew that the swindler, who represented himself to be Taylor Parkman, was not in fact that person. Neither the plaintiffs nor the defendant knew either Jim Gardner or Taylor Parkman, and each dealt with the swindler entirely in good faith in making the loans to him, believing him to be Taylor Parkman, the owner of the property offered as security for the loan, and upon which, as security, the money was advanced.

The negotiations between the swindler and the plaintiffs looking to an advancement of $850 on the property having resulted in the plaintiffs being satisfied with the security offered, after an investigation of the value and title of the land, and honestly believing that they were dealing with Taylor Parkman, the owner, the plaintiffs agreed to advance the amount, $850, on the security offered, and closed the transaction by giving to the attorney who examined the title and drew the mortgage, J. L. Bishop, a check for the $850 agreed upon as the sum to be advanced. Before this check was drawn, the

plaintiffs informed the attorney in the presence of the swindler that they wanted him (the attorney) to see that the mortgage held by the defendant on the property for $500 was paid off, and the check was then made payable to Bishop, as the attorney for Taylor Parkman, for the full amount of the loan ($850), and delivered to him. The attorney took the check to the bank, accompanied by the swindler, the supposed Parkman, who was present throughout all of these transactions, and indorsed it as the attorney for Parkman and drew from the bank the sum in currency called for by the check—in other words, and in common parlance, cashed it—and took the money thus obtained, still accompanied by the swindler, to the office of the defendant, where he paid the defendant the amount due him on the mortgage and notes held by him.

When the attorney, Bishop, first offered to pay to the defendant the amount of his claim and take up the notes and mortgage held by him, the defendant, desiring to retain the loan, objected and refused to receive the money, but upon being informed that the indebtedness was past due and that the borrower had the right to pay it off, the demand being made by the attorney on the defendant that he recognize the borrower's right to pay the past-due debt, the defendant did recognize the borrower's right to pay, and received the money from the attorney, Bishop, in satisfaction of the debt due him and cancelled and surrendered the evidences of indebtedness held by him. The attorney, Bishop, who paid the money to the defendant, did not inform him at the time of making payment that the plaintiffs had furnished the money, or who furnished it, or for whom he was paying it; but it is shown by the evidence of the defendant that he knew at the time of receiving payment that the money paid to him by the attorney had

been furnished by some one, a third party, who had advanced a larger sum of money on the property than was represented by his loan, and that such third party had furnished the money that was being paid to him for the purpose of relieving the property from the supposed prior lien held by him.

It was not until about a year after this transaction that the plaintiffs discovered the fraud practiced on them and learned that the supposed Taylor Parkman with whom they had dealt was a swindler named Jim Gardner, who had impersonated Taylor Parkman in the transaction, and that the notes and mortgages were forgeries. The plaintiffs promptly notified the defendant of these facts and demanded of the defendant a return of the money paid to him by the attorney, Bishop, and upon refusal of the defendant to pay brought this action for money had and received.

The suit was brought on the common counts, and the case submitted to the jury on the count claiming for money had and received on the issues made by the defendant's plea of the general issue, and resulted in a verdict and judgment for the plaintiffs, from which this appeal is prosecuted.

The general rule of law is clear and undisputed that money paid by the payor, laboring under a mistake of material fact, can be recovered of the party receiving it, in an action of assumpsit, on either of the common counts, for money had and received, or for money loaned, or for money paid.—*Wilson v. Sergeant*, 12 Ala. 778; *Rutherford v. McIvor*, 21 Ala. 750; *Young & Son v. Lehman, Durr & Co.*, 63 Ala. 519; *Hunt v. Matthews*, 132 Ala. 286, 31 South. 613.

It is also settled in this state that it is not sufficient for the purpose of defeating a recovery for money paid by mistake of a material fact to show that the plaintiff

had the means of obtaining the requisite knowledge, when he had no actual knowledge of the fact or the falsity of the supposed fact.—*Rutherford v. McIvor, supra; Merrill v. Brantley & Co.,* 133 Ala. 537, 539, 31 South. 847.

The principal contention in this case, then, necessarily centers around the proposition involved in the query: In whose right and interest in legal contemplation, governed by the equitable principles applicable to an action of this nature, was the money paid to the defendant? For, if the money paid to the defendant by the attorney was a payment, in legal effect, by the swindler-borrower as payor, he was laboring under no mistake of fact, and could not, of course, recover it from the defendant payee, who had previously actually advanced this amount of money to him; and, too, if the money paid to the defendant is not, in legal contemplation, a payment by the plaintiffs, but is a payment by the swindler on his own account, then there would be no privity or privity of contract, express or that could be implied as existing between the parties, that would authorize a recovery in a suit at the hands of the plaintiffs for the money thus paid to the defendant; for the money would have been received, not from the plaintiffs, but from the swindler, and the plaintiffs could not recover for money received from him.

On the other hand, if the money received by the defendant from the attorney for the forged securities was furnished by and paid in behalf of the plaintiffs, and was, in legal contemplation and effect, the payment of the plaintiffs, and was made under this honest mistake of a material fact which both parties were innocently but mistakenly acting upon at the time, then the right of the plaintiffs, as payors, to recover in this form of action the money thus paid by them to the defendant

cannot be doubted under the established rules of law applicable to this nature of action. Nor do we understand that the appellant makes any contention to the contrary. The plaintiffs' right of recovery, however, in such a form of action might depend upon whether or not the defendant's position had been changed for the worse in the transaction, and he put at a disadvantage without fault on his part.

It is the appellant's principal contention, as we construe the arguments made in an extensive brief, that under the facts of this case the money is shown to have been paid by the attorney, not as an agent for and acting on behalf of the plaintiffs, and in their right as payors, but as the agent of the swindler, and acting in his right, and that the money paid was the money of the swindler, having been advanced or loaned to him and paid by check to him through Bishop as his agent.

The evidence, as we construe it, would seem to bear out the contention that the swindler, and not the plaintiffs, was the payor, in legal contemplation; for it shows without material conflict that while the plaintiffs furnished the money to the attorney they furnished it to him as the agent of the swindler, and for the purpose of asserting a right in his behalf, as payor, that they could not assert in themselves as payors. The check was made payable to Bishop as the agent of the supposed Parkman, and Bishop cashed the check and used the proceeds paid the defendant in the right of the swindler as payor. Moreover, when the defendant objected to receiving the money, the attorney demanded that he receive it because of the right of the borrower to pay the debt owed by him to the defendant. No one else had this right but the borrower, and all the parties are presumed to have known this. The plaintiffs had no right to require the defendant, against his expressed

6 CA

objection, to receive this payment, nor did the attorney as their agent have such right; but the borrower, the swindler, did have the right, and acting under his rights the attorney made the demand for him, and the .defendant conceded the right asserted on behalf of the borrower, and accepted the money. This, it would seem to us, would be a payment in the right of the swindler-borrower, and could not be construed as the payment of the plaintiffs. If so, then the swindler, and not the plaintiffs' would be the payor.

[It seems to be without serious conflict in the evidence that Bishop, in paying the money to the defendant, asserted the rights of the borrower in making the payment, and that the defendant only received the money as paid under a demand made in the right of the borrower to pay his debt. If this payment to the defendant is to be considered as the plaintiffs' payment, then the plaintiffs would be in an attitude, in claiming the right as against the defendant as payors, of doing that which no one is in the law permitted to do; that is, to claim under and against the same right at the same time.] The plaintiffs were without authority to make this payment against the objection of the defendant. The defendant did object, and cannot be said to have received it from them, but only from him, the borrower, who had the right to pay, and in whose right a demand was made and the money received by the defendant. [Even though the payment of Bishop to the defendant be considered the plaintiffs' payment, it was made by the plaintiffs for the borrower and under his right, claiming it was his payment, and they could not now be heard to say that they were acting under their own rights, opposed to and at variance with those of the borrower, and deny that it was the payment of the borrower, after making it for him and in his right.]

[Russell, et al. v. Richard & Thalheimer.]

The payment, it would seem to us, would be none the less, under the facts set out, the payment of the swindler, for which an action would not lie by the plaintiffs to recover back the money from the defendant as having been paid by them, notwithstanding the fact that when the plaintiffs closed the transaction with the swindler and gave the attorney the check they instructed him to pay off the defendant's mortgage, and notwithstanding the further fact that the defendant knew, when he received the money, that some unnamed and unidentified party had advanced it, to be used for the purpose of clearing the title to the property from the lien of the supposed prior mortgage. Even if it be conceded that the attorney, in making the payment, was undertaking to act as the agent of the plaintiffs, and was endeavoring to carry out the trust imposed upon him, in making the payment, he made it, as a matter of fact, in the right of the borrower, and could, under the circumstances set out, have made it only in such right; and the plaintiffs cannot be heard to claim the benefits of an act of their agent done in asserting the rights of the borrower, and then repudiate such acts and set up a claim in denial of them. It is without conflict in the evidence that the defendant was not a party to any instructions given by the plaintiffs to the attorney about paying off the mortgage, and knew nothing of such instruction, and cannot, of course, be charged with any notice on that account.—See *Ala. Nat. Bank v. Rivers*, 116 Ala. 1, 22 South. 580; 67 Am. St. Rep. 95.

This suit is an equitable action in its nature, likened in both spirit and purpose unto a bill in equity (*Young v. Garber*, 149 Ala. 196, 42 South. 867), and it would be a misapplication of the equitable principles governing the rights of the parties to this action to hold that the plaintiffs could claim the benefits of the rights of the

borrower to pay his debt, and after they had thus discharged and satisfied the borrower's obligation in his right, and the defendant no longer had a recourse against the borrower on the discharged obligation, claim that *they,* and not the borrower, had paid the borrower's debt. The defendant would be left in the attitude of having received payment of the debt and cancelled the obligation of the borrower, and would have changed his situation for the worse and be put at a disadvantage, if not entirely prevented from the enforcement of his debt against the borrower, without fault on his part. While the record in this case shows that a debt against the swindler would probably be of little value, as he is shown to have been sent to the penitentiary in connection with these frauds, this does not change the legal principle involved, or the abstract legal rights of the parties; and it is unnecessary to cite authorities in support of the proposition that, even though payment of money may be made under mistake of a material fact, it cannot be recovered where the payee in the transaction has been induced to part with something valuable, or to change his position for the worse, and be put at a disadvantage, without fault upon his part.

It seems to us, from the evidence set out narrating the circumstances under which the payment was made, that there is no material conflict in the evidence that would intervene to deny the defendant the right to have given at his instance the general affirmative charge. Certainly there was evidence affording reasonable tendencies from which the jury might find that the money received by the defendant was paid by the attorney, Bishop, acting for and in the right of the person calling himself Taylor Parkman, the borrower, and was received in satisfaction of defendant's claim on the borrower, and was not paid by the attorney for the plain-

[Russell, et al. v. Richard & Thalheimer.]

tiffs. Charge No. 4, requested in writing by the defendant, was therefore erroneously refused, as, also, were the other charges requested by the defendant seeking the court's instruction to the jury on this proposition.

The case of *Strauss v. Hensey*, 9 App. D. C. 541, cited by the appellee, is distinguishable from the case at bar, although the facts in the two cases are very much alike, in that the plaintiff in his own proper person, and not the borrower, paid the money to the defendant in that case; and the decision seems to be based upon and referred to the fact that this payment by the plaintiff to the defendant was without consideration, and that therefore the plaintiff could recover. It is pointedly stated in that case that there was not sufficient evidence to support charges requesting the court to charge that if the plaintiff paid the defendant as the agent of the borrower the plaintiff could not recover, and that such charge was misleading under the facts.

Our holding in this case finds support in the case of *Walker v. Conant,* 69 Mich. 321, 27 N. W. 292, 13 Am. St. Rep. 391, cited by appellant. There is also a close similarity in the facts of that case and this; but we do not desire to be understood as approving the holdings or agreeing with the reasoning in that case, further than our direct expression, as set out in this opinion, agrees with what is there said.

Discussion of other assignments of error is unnecessary. It will be seen, from what we have said, that a reversal of the case must necessarily follow.

Reversed and remanded.