[Civ. No. 9801. First Appellate District, Division Two.—March 13, 1936.]

CALIFORNIA PACIFIC TITLE & TRUST COMPANY (a Corporation), Respondent, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a Corporation), Appellant.

Louis Ferrari, W. E. Johnson, T. J. Bricca, Stoney, Rouleau, Stoney & Palmer and Royal E. Handlos for Appellant.

Henry E. Monroe and Robert A. Woodyard for Respondent.

SPENCE, J.—Plaintiff sued defendant on common counts

for money had and received in the sum of $1376.98. From a judgment in favor of plaintiff, defendant appeals.

This litigation arose out of two loan transactions on real property located in Mill Valley belonging to Anita Hodgkin. Both transactions were consummated without the knowledge of said Anita Hodgkin and involved forgeries by J. J. MacArthur, a real estate broker.

In 1930 defendant loaned the sum of $2,500 on a note secured by a deed of trust on said property. These instruments purported to be executed by said Anita Hodgkin. In 1931 defendant was advised that Anita Hodgkin had not executed said instruments and defendant interviewed said MacArthur who had handled the transaction. MacArthur admitted the forgery and agreed to reimburse defendant. As a result of this interview and on March 25, 1931, defendant sent a reconveyance and other instruments connected with the transaction to the San Rafael Land and Title Company (hereinafter called the escrow company) with instructions to surrender them upon payment of approximately $2,150 plus interest, which was the balance then due upon said loan. Thereafter MacArthur paid the sum of $800 directly to defendant and a second letter was sent by defendant to the escrow title company on April 23, 1931, advising it of said payment and of the amount then remaining due. The defendant had no further transactions with the escrow title company or any of the parties except that thereafter and on April 28, 1931, it received from the escrow title company the balance due out of the proceeds of the Smith loan to which reference is hereinafter made.

In the meantime and on March 27, 1931, MacArthur had ordered a preliminary report from the escrow title company covering the record title to said property. On April 25, 1931, MacArthur first met Eugene N. Smith and interested him in loaning money secured by a deed of trust on said property. Smith inspected the property, agreed to make the loan thereon and deposited the necessary money with the City Title Insurance Company of San Francisco. His instructions to the last-mentioned company were to deliver the money upon "recordation deed of trust and note, Harry Roland, an unmarried man, to Eugene N. Smith for $2500 . . . covering property as shown in report of San Rafael Land Title Company No. 7817 . . . " No instruction was given by Smith regarding the payment of defendant's loan.

Without the knowledge of any of the parties, MacArthur had forged a deed from Anita Hodgkin to Harry Roland, a fictitious person, and had executed a note and deed of trust in favor of Smith, signing the name Harry Roland. Upon instructions from MacArthur and from the City Title Insurance Company, the escrow title company consummated the transaction, paying the sum of $1376.98 to defendant and issuing a check to Harry Roland for $898.52, the balance of the proceeds of the Smith loan. This check was cashed by MacArthur by endorsing the name of Harry Roland thereon.

The escrow title company, as agent of plaintiff title insurance company and in accordance with a working agreement between the two companies, issued a policy of title insurance in the name of the plaintiff company insuring the validity of the Smith deed of trust. The discovering of MacArthur's forgery in the Smith loan transaction came in the following year, and plaintiff thereafter paid Smith the sum of $2,209.28 to cover his loss. Pursuant to the provisions of the title insurance policy, plaintiff took an assignment from Smith of all of his rights. Plaintiff also took an assignment of all the rights of the escrow title company. It then brought this action without making any demand on defendant.

In the first count, plaintiff alleged that on April 29, 1931, defendant became indebted to plaintiff in the sum of $1376.98 for money had and received for the use and benefit of plaintiff and which sum defendant promised to pay on demand. It further alleged that demand had been made but no part of said sum had been paid. In the second count, the allegations were similar except that it was alleged that on said date, defendant became indebted to Eugene N. Smith in the same sum and that said Eugene N. Smith had assigned his claim to plaintiff. In the third count, the allegations were similar except that it was alleged that on said date defendant became indebted to the escrow title company in the same sum and that said escrow title company had assigned its claim to plaintiff. The prayer of the complaint was for the sum of $1376.98 plus interest. Defendant denied all of the principal allegations of the complaint, set forth certain affirmative allegations concerning the facts above set forth and further alleged that plaintiff's loss was sustained solely by reason of the execution of its policy of title insurance insuring the validity of the Smith deed of trust. The trial court made extensive findings of fact including findings on all three

counts of the complaint, as well as upon the facts not appearing in the pleadings, and concluded "that the equities of the plaintiff are greater than the equities of the defendant and that the plaintiff is entitled to judgment in the amount of $1,376.98 . . . " Judgment was entered accordingly.

Appellant makes numerous attacks upon the judgment in its briefs. Respondent does not discuss all of the points raised by appellant and frankly concedes such failure, stating "it is apparent these points are completely overshadowed by the element of fraud". It bases its claim of fraud upon the finding of the trial court "That Chas. H. Huntoon (the branch manager of defendant) knew that the defendant bank was being reimbursed on the Anita A. Hodgkin forged deed of trust by the said J. J. MacArthur out of the proceeds of a second forged loan procured by said MacArthur upon the same property." Respondent argues that appellant impliedly represented that the first forged deed of trust was valid. There are many answers to respondent's claim of fraud, but we need mention but two. In the first place, there is not a particle of evidence to sustain the finding that Huntoon knew that defendant was to be reimbursed out of a second loan, forged or genuine. Appellant merely placed its instruments in escrow to be surrendered upon payment of the amount which was admittedly owing by MacArthur to appellant as a result of the first loan transaction. This was long before MacArthur first met Smith and it does not appear that any representative of appellant had any knowledge of the Smith loan transaction or of any plan which MacArthur may have had for the payment of the first loan. In the second place, even assuming that it may be said that there was an implied representation regarding the validity of the first loan transaction, there is neither evidence nor finding that Smith or anyone else relied upon such representation to his damage. In fact, the testimony of Smith, who was a witness for respondent, is to the contrary. He testified that he supposed he was loaning money to Harry Roland; that he had no transactions with appellant; that he had "no control of or interest in as to where the money that was loaned was to go or to whom it was to be paid"; and that he was "only interested in getting a valid deed of trust upon the property and a policy of title insurance". It is therefore apparent that Smith was concerned only with the validity of the second loan transaction; that he would have consum-

mated said transaction and paid out the same amount of money regardless of the existence of the first loan transaction; and that he did not rely to his damage upon any claimed representation regarding the first loan transaction. We are therefore of the opinion that there was no showing of actionable fraud, or any fraud upon the part of appellant and that the judgment may not be sustained upon that theory.

The only other theory urged by respondent in support of the judgment is that the money was paid to appellant by Smith under a mistake of fact. Our attention has not been called to any authority precisely on all-fours with the present case, but several cases involving somewhat similar facts have been cited. These authorities, however, are not harmonious. Appellant cites and relies upon *Walker* v. *Conant,* 69 Mich. 321 [37 N. W. 292, 13 Am. St. Rep. 391], and *Russell* v. *Richard & Thalheimer,* 6 Ala. App. 73 [60 So. 411], *certiorari* denied, *Ex parte Richard & Thalheimer,* 180 Ala. 580 [61 So. 819], while respondent cites and relies upon *Grand Lodge* v. *Towne,* 136 Minn. 72 [161 N. W. 403, L. R. A. 1917E, 344], and *Strauss* v. *Hensey,* 9 App. D. C. 541.

In *Walker* v. *Conant, supra,* the second lender, Walker, paid off the first lender, Mrs. Conant, by paying the necessary money directly to her after accepting the new loan papers from the forger. In the course of the opinion, the court said on pages 294 and 295: "But by no act of Mrs. Conant has the plaintiff been put in any worse condition than he would have been had she not been concerned in the transaction. . . . I think the money paid to Mrs. Conant . . . was in reality paid to her or her agent by Edgar Van Riper,—the man who borrowed or obtained it from her, and who honestly owed it to her,—and not by the plaintiff or his agent. . . . It is the same, in fact and in legal effect, in my opinion, as if the $3,000 had been paid direct to Van Riper by Walker, and he had taken the money away, and out of it afterwards paid the debt to Mrs. Conant, and received the note and mortgage direct from her hands. In such case, it seems to me, under all the authorities, that the fact that the plaintiff or his agent supposed his bond and mortgage to be genuine, and the Conant mortgage to be a valid lien upon the premises, cuts no figure in the case. It is not a case where he has purchased the Conant mortgage as an investment, believing it to be valid. It is not a case where he has parted with his money, and received a void security which he would not have bought

had he known it to be false and forged. But in the present case he was loaning the $3,000 upon an $8,000 farm, and, as he supposed, upon good security. This was the main and absorbing transaction. The payment and discharge of the Conant mortgage was but an incident of his dealing. If the mortgage had not been in existence, Van Riper would have obtained the same sum, $3,000, upon the bond and mortgage delivered to E. C. Walker. Being in existence, and preventing, until discharged, a first mortgage upon the premises, Walker stipulated that this mortgage should be released out of the funds paid by him to Van Riper upon the loan. Walker would have been equally satisfied, no doubt, if Van Riper had paid the Conant mortgage before receiving any money upon the mortgage executed to Helen M. Dudley, and assigned to plaintiff, or if he had taken the money after it was paid to him and procured the release of Mrs. Conant. The plaintiff was not buying or paying off the Conant mortgage; he was loaning $3,000 to Van Riper's father, as he supposed, upon good security.''

In *Russell* v. *Richard & Thalheimer, supra,* the second lender paid the entire proceeds of the loan to the attorney for the forger with instructions to pay off the first loan. Recovery was denied to the second lender as against the first lender. The court said on page 414, ''The evidence, as we construe it, would seem to bear out the contention that the swindler, and not the plaintiffs, was the payor, in legal contemplation.'' The court cited *Walker* v. *Conant, supra,* in support of its decision, but stated ''we do not desire to be understood as approving the holdings or agreeing with the reasoning in that case, further than our direct expression, as set out in this opinion, agrees with what is there said''. It is apparent that the court was distinguishing *Walker* v. *Conant, supra,* upon the ground that the money was paid in that case directly by the second lender to the first lender. The court also distinguished the case of *Strauss* v. *Hensey, supra,* ''in that the plaintiff in his own proper person, and not the borrower, paid the money to the defendant in that case''.

In *Grand Lodge* v. *Towne, supra,* the second lender, through its own attorney, paid the money directly to the first lender. The trial court denied recovery, but the cause was reversed with directions to enter judgment in favor of plaintiff. The court conceded that ''the questions are very in-

teresting'', but decided that the second lender was entitled to recover from the first lender. The court discussed *Walker* v. *Conant, supra,* but stated ''we cannot follow it''. It also discussed *Russell* v. *Richard & Thalheimer, supra,* and said with respect thereto, ''The facts that plaintiff paid the money to the swindler, and that the latter, acting through his attorney, paid it to defendant, perhaps justified the decision that it was the swindler's money, and distinguishes the case from the one at bar from the Michigan case (*Walker* v. *Conant, supra*), and from *Strauss* v. *Hensey,* 9 App. D. C. 541.''

Some of the reasoning in the foregoing authorities does not appear to be wholly satisfactory. In each instance, the main transaction in which the second lender was involved was the second loan transaction. He parted with the entire proceeds of the second loan under the belief that the instruments evidencing the second loan were genuine and not forged. The use of any part of the proceeds of the second loan for the purpose of payment of the first loan was merely an incidental and collateral matter. It would therefore seem that no distinction should be drawn between those cases where the money is paid directly by the second lender to the first lender and those cases where the money is paid by the second lender to the forger or his agent for payment to the first lender. If such a distinction is proper, we believe this case falls within the rule of *Russell* v. *Richard & Thalheimer, supra,* and that the second lender was not entitled to recover from the first lender.

But we prefer to rest our decision in the present case upon the ground which is suggested in the opinion in *Walker* v. *Conant, supra.* Both Smith and appellant were the innocent victims of the forger. Neither was chargeable with fraud. As the result of the first forged loan transaction there was a just debt owing from the forger to appellant. The summary of Smith's testimony, which is given above, affirmatively shows that he would have parted with the entire proceeds of the second loan transaction regardless of the use which was to be made of the proceeds of the loan. In other words, Smith was not buying an existing loan upon the premises, but was making a separate and independent loan thereon, and no act upon the part of appellant and no mistake of fact regarding the validity of the first loan resulted in any loss to Smith. If the forger had paid appellant's loan immediately

before making the Smith loan, and had then received the entire proceeds of the Smith loan, it would not have been suggested that Smith would have then had any claim against appellant. Should the mere fact that appellant was paid out of the proceeds of the Smith loan at the direction of the forger, give to Smith any rights which he would not have otherwise had? We think not. Smith's loss was occasioned solely by the forgery in the second loan transaction. This loss would have been sustained regardless of whether the first loan was or was not in existence at the time and also regardless of whether the first loan transaction was forged or genuine. Smith had his legal remedy against the forger, the notary and the surety on the notary's bond, and, under the circumstances, we know of no reason for permitting him to invoke the equitable principles underlying the action for money had and received in support of an action against appellant. (17 Cal. Jur. 602, sec. 1.) If Smith could not maintain an action for money had and received against appellant, then respondent, as Smith's assignee, could not maintain such an action.

Appellant makes the further contention that the absence of a demand was fatal to respondent's recovery under the facts before us. There may be merit in appellant's contention, but we do not discuss it in view of the conclusions which we have reached.

The judgment is reversed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 11, 1936. Curtis, J., voted for a hearing.