New York Title and Mortgage Company, Respondent, *v.* Title Guarantee and Trust Company, Appellant, Impleaded with George F. Stainton, Jr., and Another, Defendants.

First Department, November 2, 1923.

Payments — voluntary payment — action to recover money paid to defendant trust company to satisfy debt of third person — fraud of third person unknown to plaintiff or defendant trust company made plaintiff's mortgage second mortgage — payment was voluntary and cannot be recovered.

In an action to recover back money paid by the plaintiff to the defendant trust company to satisfy the debt of one of the defendants, it appeared that the original mortgage on the premises on which plaintiff received a mortgage to secure a loan of money, a part of which was paid to the defendant trust company, was held by the defendant trust company and was paid with moneys from an estate by the individual defendant who received an assignment of the mortgage but did not satisfy it; that at that time the title to the property was in the mother-in-law of the individual defendant who subsequently gave a mortgage to the estate; that thereafter the individual defendant reassigned the original mortgage to the defendant trust company to secure a loan, and later the title to the property was transferred to the wife of the individual defendant and subsequently the individual defendant filed a forged satisfaction piece purporting to satisfy the mortgage to the estate and then secured a loan for his wife from the plaintiff on the security of a first mortgage on the same premises, and in that transaction the plaintiff paid over to the defendant trust company the money sued for in this action for the purpose of satisfying the debt of the individual defendant to the defendant trust company and the original mortgage was then satisfied of record; that at the time the original

mortgage was reassigned by the individual defendant, the defendant trust company made no search; that as the result of the fraud of the individual defendant, the mortgage to the estate was still in existence and was a valid lien in priority to the mortgage given to the plaintiff.

*Held,* that the payment by the plaintiff to the defendant trust company to satisfy the individual defendant's debt was a voluntary payment on its part and cannot be recovered inasmuch as the defendant trust company acted in good faith and without any notice of fraud by its debtor, the individual defendant.

APPEAL by the defendant, Title Guarantee and Trust Company, from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 25th day of September, 1922, upon the decision of the court, rendered after a trial at the New York Special Term, in so far as said judgment is against said defendant.

*Edward M. Perry* [*Lynn C. Norris* of counsel], for the appellant.

*James R. Deering,* for the respondent.

MARTIN, J.:

On June 25, 1908, the Jefferson National Realty Company, then being the owner in fee of certain premises known as No. 301 Quincy street, borough of Brooklyn, New York city, made and executed its bond and mortgage upon said premises for the sum of $17,500 to the Lotus Realty Company. The mortgage was thereafter assigned to the Title Guarantee and Trust Company by assignment dated October 29, 1908. This mortgage was foreclosed by the Title Guarantee and Trust Company. From the judgment of foreclosure and sale, dated October 29, 1909, it appears that $15,879.75 was due on said mortgage, and that there was allowed to plaintiff the sum of $132.75 as costs and $200 as an extra allowance. By deed dated October 13, 1909, during the pendency of the foreclosure proceedings, the mortgaged premises were conveyed by the Jefferson National Realty Company to Ottilie Mente who was the mother of the defendant Gertrude Stainton and mother-in-law of the defendant George F. Stainton, Jr.

On November 24, 1909, the defendant George F. Stainton, Jr., applied to Edwin Kempton, attorney for the defendant Title Guarantee and Trust Company in said foreclosure action, for an adjournment of the sale which was about to be held under the foreclosure judgment, and paid $250 for a two weeks' adjournment. At that time George F. Stainton, Jr., stated to Mr. Samuel U. Bailey, who was the managing clerk for Edwin Kempton, either that he was the owner of the property or that his wife was such owner.

The sum of $250 was paid to the Title Guarantee and Trust

**492** NEW YORK TITLE & MORTGAGE CO. *v.* TITLE G. & T. CO.

First Department, November, 1923. [Vol. 206

Company by George F. Stainton, Jr., on account of the sum of $16,512.53, which was then due the Title Guarantee and Trust Company under said foreclosure judgment. On December 2, 1909, George F. Stainton, Jr., completed the payment of the amount then due upon the foreclosure judgment by delivering to the Title Guarantee and Trust Company his personal check for $16,000, a check of the defendant Gertrude Stainton for $190, and the balance in cash. An assignment of the mortgage, dated December 2, 1909, was thereupon delivered to George F. Stainton, Jr. The court at Special Term found that the Title Guarantee and Trust Company had no knowledge where Stainton obtained the funds with which he had thus paid the mortgage, an assignment of which he took in his own name.

At the time of the commencement of the foreclosure proceedings, title to the premises was in the Jefferson National Realty Company. Mr. Bailey of the Title Guarantee and Trust Company says he did not know that at the date of the assignment the title to the premises was in Ottilie Mente, mother-in-law of Stainton.

The defendant George F. Stainton, Jr., whose fraudulent acts have been the principal cause of this litigation, was a son of Richard J. Stainton, deceased. His uncle, who was also named George F. Stainton, was the executor of the estate of the said Richard J. Stainton. In November, 1909, the estate of Richard J. Stainton owned 150 shares of the capital stock of the Queens County Trust Company, which stock was sold on November 22, 1909, for $17,250. The court at Special Term found that the amount received on that sale was intrusted to defendant George F. Stainton, Jr., by his uncle as executor of said estate of Richard J. Stainton, for the purpose of investing in a loan to be secured by a first mortgage covering 301 Quincy street, Brooklyn, N. Y.

On December 7, 1909, Ottilie Mente (mother-in-law of George F. Stainton, Jr.) executed a bond and mortgage on No. 301 Quincy street to the estate of Richard J. Stainton, the funds of which estate had been used by defendant Stainton to secure an assignment of the mortgage which was being foreclosed. The defendant George F. Stainton, Jr., violated the trust reposed in him, in that he used the estate's money to secure an assignment of the mortgage to himself, which assignment was dated December 2, 1909. That mortgage should have been satisfied and discharged of record to make a first lien of the mortgage executed by Ottilie Mente to the estate. The Ottilie Mente mortgage was recorded December 14, 1909. She also executed another mortgage to Annie Stainton for $10,000 bearing date December 7, 1909, which mortgage was recorded December 14, 1909.

By assignment dated January 15, 1910, recorded January 15, 1910, Stainton reassigned the bond and mortgage made by the Jefferson National Realty Company, bearing date June 25, 1908, to the Title Guarantee and Trust Company. This assignment was made to secure a loan of $5,000 advanced to Stainton by the Title Guarantee and Trust Company. He also delivered his note to secure that loan. On January 19, 1910, the Title Guarantee and Trust Company made an additional loan to Stainton to the extent of $3,000 upon similar terms. On the reassignment of the mortgage to it, no search was made by the Title Guarantee and Trust Company.

On February 4, 1910, a deed of the premises was made by Ottilie Mente to the defendant George F. Stainton, Jr., and recorded on February 7, 1910. By deed dated February 8, 1910, recorded February 8, 1910, George F. Stainton, Jr., conveyed the premises to Gertrude Stainton, his wife. On February 17, 1910, an application was made by George F. Stainton, Jr., to plaintiff for a loan to his wife of $13,000 to be secured by a first mortgage on No. 301 Quincy street, then in the name of his wife. On February 21, 1910, the mortgage made by Ottilie Mente to the Stainton estate for $17,500 was satisfied by George F. Stainton, Jr., who filed a forged satisfaction piece.

It was not until Stainton put the property in his wife's name that he applied to plaintiff for the loan and offered in return a first mortgage by his wife for $13,000. The $13,000 was loaned; $8,064.50 thereof was paid by plaintiff's check to the Title Guarantee and Trust Company to pay the indebtedness of George F. Stainton, Jr., and the balance given to the Staintons. On such payment by the plaintiff title company, the mortgage originally made by the Jefferson National Realty Company was reassigned to George F. Stainton, Jr., who satisfied it. Before making the loan, however, a search was made by the plaintiff which disclosed the fact that two unsatisfied mortgages were on record, one made by the Jefferson National Realty Company to the Lotus Realty Company, an assignment of which was held by the Title Guarantee and Trust Company to cover the loans made to George F. Stainton, and one held by Anna Stainton, the Ottilie Mente mortgage having been satisfied by the forged satisfaction piece. The Staintons subordinated the $10,000 mortgage of Anna Stainton to the new first mortgage of $13,000 given to plaintiff.

The plaintiff thereafter, according to the record, held a first mortgage, but in reality held a second mortgage, the Ottilie Mente mortgage to the Stainton estate, a satisfaction of which had been forged, being a prior lien. Subsequently it was so held, in an

action to foreclose the Ottilie Mente mortgage. By the foreclosure of the first mortgage, the mortgage held by the plaintiff was rendered worthless, for the reason that the amount realized on the sale was not sufficient to satisfy any part of plaintiff's claim after the payment of the mortgage foreclosed.

The question now arises on this appeal whether the plaintiff, New York Title and Mortgage Company, may recover from the defendant Title Guarantee and Trust Company the money paid in satisfaction of the debt due it by Stainton.

The plaintiff asserts that it searched the title and took every precaution that could be taken for its protection; that, on the other hand, the defendant Title Guarantee and Trust Company was negligent in not searching the title at the time it made its loan to Stainton, and that the recovery obtained against the defendant should be sustained.

The court at Special Term states the ground upon which a recovery was permitted as follows: " The sum of $8,064.50 was paid direct to the defendant Title Company, and no evidence has been offered by said Title Company of its good faith or of the use of any precaution on its part in its transactions with Stainton. It is not denied that through the fraud of Stainton the defendant Title Company received plaintiff's money and should be required to return it."

Out of the mass of testimony offered on the trial the facts may be summarized as follows:

The plaintiff was asked for a loan of money. The party seeking the loan agreed to give as security a first mortgage on 301 Quincy street, Brooklyn. The loan was made and the mortgage given. It was afterwards discovered that the mortgage given was not a first mortgage but a second mortgage by reason of the fact that there had been a forged satisfaction piece placed on record by one of the parties to whom the loan was made, discharging of record a mortgage which was a first mortgage. Part of the money loaned was paid to the defendant Title Guarantee and Trust Company to cancel a debt due to it from the person guilty of the fraud.

The sole question now here for decision is whether plaintiff may recover that money from the defendant Title Guarantee and Trust Company.

The Court of Appeals in *Carlisle* v. *Norris* (215 N. Y. 400, 415) stated the law to be as follows: " If defendants received the proceeds in good faith and without notice of any wrong and credited them on an indebtedness due them, plaintiff is not entitled to recover them back."

The plaintiff contends, however, that it is entitled to recover money paid to cancel the indebtedness of a third person where the payment was made through the fraud of that third person and a mistake on its part. The law seems to be settled adversely to that contention.

In *Carlisle* v. *Norris* (*supra*) the court further said: " Therefore, I think that there was nothing in this transaction as the evidence actually shows it to have occurred which was justly calculated to excite the suspicions of defendants or their representative, and further that even if it be assumed that they are to be charged with knowledge that the check was drawn by Beekman & Company instead of by Langharr with whom Brouwer explained he had made the money, inquiry would have elicited such a truthful explanation of this apparent discrepancy as would have dissipated any suspicious appearances. The defendants were not bound at this time to treat with Brouwer as a thief; they had a right to assume that he was an honest man. They were not bound to conjure up all such doubts and suspicions, if any, as might have been suggested to the mind of a very vigilant and mistrustful person. Even negligence would not defeat their right. They were simply bound to act honestly and in good faith and in the absence of evidence which would justify a jury in convicting them of bad faith because not pursuing an inquiry into the origin of the check which was given them, recovery of its proceeds cannot be had from them on the theory now discussed. (*Cheever* v. *Pittsburgh, S. & L. E. R. R. Co.*, 150 N. Y. 59, 65, 66; *Second Nat. Bank of Elmira* v. *Weston*, 161 N. Y. 520, 526; *Rochester & C. T. R. Co.* v. *Paviour*, 164 N. Y. 281, 284; *Ward* v. *City Trust Co. of N. Y.*, 192 N. Y. 61, 72.)"

In *Hatch* v. *National Bank* (147 N. Y. 184, 191) the court said: " If Mills, Robeson & Smith, on receiving the check of Ferris & Kimball, had at once collected it and turned it into money, and then had paid that money to the bank in discharge of their debt to it, and the bank had accepted that payment in ignorance of the source from which the money had been derived, and had surrendered the notes and discharged their debtors' liability in entire good faith, the owner of the stolen money would have had no right of recovery against the bank. [*Justh* v. *Nat. Bank of Commonwealth*, 56 N. Y. 478; *Stephens* v. *Board of Education*, 79 id. 183.] This doctrine goes upon the ground that money has no earmark; that in general it cannot be identified as chattels may be, and that to permit in every case of the payment of a debt an inquiry as to the source from which the debtor derived the money, and a recovery if shown to have been dishonestly acquired, would disorganize all business

**496**  NEW YORK TITLE & MORTGAGE CO. *v.* TITLE G. & T. CO.

First Department, November, 1923.          [Vol. 206

operations and entail an amount of risk and uncertainty which no enterprise could bear. The rule is founded upon a sound general policy as well as upon that principle of justice which determines as between innocent parties upon whom the loss should fall under the existing circumstances. If, therefore, Smith had come with the money, and with it had paid his debt over the counter, the amount could not have been recovered by the plaintiff, although admitted to have been actual proceeds of the stolen certificate. I think the situation was not at all changed because the debtor came with Ferris & Kimball's check which the bank collected. If Smith had brought that and the bank had accepted it as cash or conditionally, upon its proving good, the result would have been the same. The debt would have been paid and the money become the absolute property of the bank. In *Goshen National Bank* v. *State* (141 N. Y. 379) it was a draft which paid the debt and which the comptroller received and collected. Nor does it change the result that Smith deposited the check and did not at the moment direct its application upon the liability of the firm."

In *Ketchum* v. *Bank of Commerce* (19 N. Y. 499, 511) the court said on the subject of recovery because of mistake: " ' The truth is, these parties (the plaintiff represented a bank) were at liberty to pay the money, or to let it alone. They were under no obligation to pay it, but believing the defendant had a valid security on an estate which was pledged to them, they think it fit for their own benefit to pay this sum of money to the defendant. It afterwards turns out that they do not get the benefit they expected, because a fact which they thought existed does not exist. But it seems to me impossible to say that they paid this money under such a mistake of fact as comes within the rule, so as to authorize them to get it back, any more than they would be authorized to get it back in the case of a man coming to me and saying " you have certain goods in your possession, pledged by A. B. to you; I bought these goods, and I desire to pay his debt to get them away." ' (*Aikin* v. *Short*, 37 Eng. Law and Eq. 592.) It would not be easy to add anything to the force of these observations, which are as applicable to the case before us, as to the one in respect to which they were made."

In *Spalding* v. *Kendrick* (172 Mass. 71, 72) the court said: " We may assume upon the evidence that the money belonged to the bank, and was misappropriated by Hobbs. There was evidence to warrant the finding of the judge, that the defendant Kendrick had no knowledge that the money was other than the property of Hobbs, and that he received it through his attorney in good faith, and as security for a liability of greater amount than five

thousand dollars, and on account thereof forbore to prosecute his petition for relief as surety on the bond of Hobbs. The evidence warranted a finding that his receipt of it was the same in legal effect as if it had been put into his possession by Hobbs with his own hand, to be held as security against loss as surety on the bond. The evidence tended to show that the draft was sent to Mr. Dickinson to be held and used as such security, and that, if the delivery of it to Mr. Cooper was not expressly authorized by Hobbs, it was within the general purpose of Hobbs, and was soon afterwards known to him and ratified by him.

" The law of the case is settled by numerous decisions. If a thief gives stolen money, or negotiable securities before their maturity, in payment of his debt, or as security for it, to one who in good faith receives the money or securities as belonging to him, the creditor can hold the property as against the true owner. As between the payor and the payee there is no mistake which affects the validity of the transaction. One receiving money or negotiable securities in payment of or as security for an existing debt is not bound to inquire where the money or securities were obtained. It is better that money or a negotiable security, passing from hand to hand to one who rightly receives it for a valuable consideration, should carry on its face its own credentials." (See, also, *Ball* v. *Shepard*, 202 N. Y. 247.)

It is also contended by the plaintiff that the defendant Title Guarantee and Trust Company was negligent; that it should have searched the title when the loan was made.

If it saw fit to loan money without a search it had a right to do so. It also had a right to take the assignment of the mortgage without a search.

In *Potter* v. *Sachs* (45 App. Div. 454) this court said: " Records give constructive notice to the extent provided by the statute and rules of law, but no further. A party has the right, at his own risk, to purchase the title to premises without examination. He has that constructive notice which the law imputes, not of everything that he might have learned had he read all the papers connected with the title." (See, also, *Ebling Brewing Co.* v. *Gennaro*, 189 App. Div. 782, to the same effect.)

In case a search had been made it would have disclosed the fact that the mortgage on which the Title Guarantee and Trust Company was loaning money was a first mortgage. In fact it was such, it having been made by a predecessor in title to Ottilie Mente. But if we assume that a search would have disclosed something which, if followed up, would have disclosed the wrong-

32

doing of George F. Stainton, Jr., we cannot charge defendant with a breach of duty in omitting the search.

The plaintiff searched before it made a loan, but was unable to discover any wrongdoing.

While it is true that plaintiff's check was made out to the defendant title company; that defendant had previously given Stainton the full amount thereof, less a small amount for interest; and furthermore defendant title company believed that the security for its loan, the mortgage which was then reassigned to Stainton, was a good first mortgage, it made its loan in good faith to Stainton and was entitled to do just exactly what it did do, to retain the security which he gave to it until the loan was repaid. The plaintiff made a voluntary payment of the debt of another and is not now entitled to a return of the money so paid. The Title Guarantee and Trust Company to whom the payment was made acted in good faith, and without any notice of the fraud.

The judgment should, therefore, be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., SMITH, FINCH and McAVOY, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs. Settle order on notice.