[Civ. No. 14562.   First Dist., Div. Two.   Mar. 8, 1951.]

JACK HILLIARD, Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Corporation), Respondent.

Brown, Smith & Ferguson for Appellant.

Samuel B. Stewart, Jr., Christopher M. Jenks, H. H. Bechtel and Charles E. Cooper for Respondent.

GOODELL, J.—Appellant is a used car dealer, and on April 21, 1947, one Cassaro drove a 1941 Buick into his lot in Oakland and offered it for sale at $1,250. The car had no license plates, but a sticker on its windshield indicated that they had been applied for in Oklahoma. Cassaro informed appellant's manager, Paul Murray, that respondent bank held a chattel mortgage on the car.

When Murray telephoned to verify this, the bank's representative stated that it was the legal owner of the car and that its claim amounted to $1,008.37. Murray, acting for appellant, agreed to pay Cassaro $1,250 for the car, mailed the bank a check for $1,008.37, paid Cassaro the difference, and took delivery of the car, all on the same day. About a month later the bank sent appellant the pink slip purporting to be the certificate of ownership, as soon as it came from the Motor Vehicle Department.

After reconditioning the car, and about four months after the sale, appellant sold it to one Warren. It later turned out that everybody concerned had been dealing with a stolen car which belonged to General Petroleum Corporation.

When Warren made claim on appellant, the latter promptly paid General Petroleum Corporation $1,400, the value it placed on the car, thus making good Warren's title. Appellant then brought this action against the bank for the $1,008.37. The court rendered judgment in favor of the bank for costs, and this appeal was taken.

Appellant's position is that the bank dealt with the car as the *owner* thereof because of the language of section 67,

Vehicle Code, which defines "legal owner," *inter alia,* as "the mortgagee of a vehicle." While conceding the general rule that "a lien . . . transfers no title" (Civ. Code, § 2888) appellant argues that the peculiar provisions of section 67 are specific and therefore controlling over section 2888 whenever motor vehicles are concerned. From this premise he argues that there was a failure of consideration since he, a bona fide purchaser of the car, paid the bank the amount it demanded "for sale of the legal title," and is now entitled to restitution because it turned out that the bank had no title, the car having been a stolen vehicle.

■ It is perfectly clear that while section 67 calls a mortgagee a "legal owner," such legislative fiat does not alter the settled rule that a mortgagee has no title. (*In re Senetos,* 29 F.2d 854.) The words "legal owner" were employed in section 67 only in a "special sense" (*Jolly* v. *Thornton,* 40 Cal.App.2d Supp. 819, 821-2 [102 P.2d 467]), so special, indeed, that the definition does not even apply or extend to all parts of the selfsame code, for section 402 thereof, which deals with liability of owners for negligence, provides in subd. (f) that "A chattel mortgagee of a motor vehicle out of possession shall not be deemed an owner within the provisions of this section" (see *Graf* v. *Harvey,* 79 Cal.App.2d 64, 70 [179 P.2d 348]). ■ Hence the premise on which appellant's argument is built is not a valid one.

Secondly, appellant's contention that he bought the car from the bank and paid it $1,008.37 "for sale of the legal title," is contradicted by his verified complaint, wherein he alleges that Cassaro, the purported owner, agreed to sell the car to plaintiff; that defendant held a purported chattel mortgage on which there was an unpaid balance of $1,008.37, and that plaintiff, "in order to consummate such sale and to acquire clear title to said automobile, did pay off, by check, said purported chattel mortgage to the defendant" in the amount of $1,008.37 "and the said defendant did release said purported chattel mortgage ; . . . ." Since the bank's status as a (purported) chattel mortgagee was thus admitted by plaintiff's own complaint, and ownership was never in issue, appellant cannot now contend that the bank was anything but a mortgagee.

Thirdly, it cannot be claimed that Murray, with almost 20 years' experience in buying and selling automobiles, did not know that the bank was merely a mortgagee. He testified on cross-examination that he understood the bank held a chattel

mortgage and that Cassaro "wanted us to pay off the loan . . . and the balance due to him." Also: "Q. Well you know sufficient of the motor vehicle registrations expressions? A. Yes, I do. Q. And a legal owner doesn't actually mean as it does in other transactions? A. That is right. It is a little different terminology than saying a chair, for instance." By this simple illustration he showed that he knew that the legal owner of a chair held title to the chair, not merely a mortgage on it. He knew, moreover, that the bank did not have possession, because Cassaro drove the car into appellant's place of business, and by offering to sell it for $1,250 and accepting that price, exercised an owner's dominion over it.

It is an undisputed fact that Cassaro borrowed approximately $1,000 from the bank and gave a promissory note therefor. It may be conceded that, had the bank attempted to foreclose its chattel mortgage it would have found its "security" valueless. But it was still entitled to a personal judgment on the obligation evidenced by the note (*Frost* v. *Witter,* 132 Cal. 421, 428 [64 P. 705, 84 Am.St. Rep. 53]; *Gaffner* v. *American Finance Co.,* 120 Wash. 76 [206 P. 916, 28 A.L.R. 624]). "The debt, note or other obligation is the principal thing, the duty to pay or perform which is none the less binding because it is secured by mortgage" (17 Cal. Jur. pp. 710-11). The lien is accessory to the principal debt (Civ. Code, § 2909).

By appellant's own admissions he paid off the note to the bank in order to consummate the sale of the car. He made the payment voluntarily, on Cassaro's written authorization, hence for his account, and just as if he had paid Cassaro the whole $1,250 and the latter had then paid off the bank out of that sum. (See Gaffner case, *supra,* 206 P. at 918.)

The bank, when it lent Cassaro $1,000 believed him to be the owner of the car; appellant when he paid $1,250 for the car believed Cassaro to be its owner; both were mistaken, but such type of mistake in the present circumstances is no basis for an action by one innocent party against another for restitution.

The facts in the Gaffner case, *supra,* were identical with the facts herein. The only differences between them (which are but incidental and immaterial) are that there (a) the mortgagee was a finance company instead of a bank; (b) the mortgagor of the stolen car was himself the thief (which is by no means a certainty herein) and (c) the mortgage was

paid off at the finance company while here the check for $1,008.37 was mailed, accompanied by a letter and a printed pay-off slip signed by Cassaro authorizing the bank to accept from appellant the $1,008.37 ''being the balance due on my account.'' There the judgment was for defendant finance company and the appellant urged, as this appellant urges, that where one pays money to another through mistake he is entitled to recover it back from the payee. The court held: ''The general rule is that an action for money had and received can be maintained whenever one has received money from another by mistake, and which the receiver ought not, in equity and good conscience, to retain. We are of the opinion, however, that the facts of this case do not come within that rule. The respondent had made a bona fide loan to Hughes, not upon a forged note, but upon that given by the borrower himself. Hughes actually became indebted to the respondent. It is true the mortgage given to secure the indebtedness was upon a stolen machine, and was consequently fraudulently made and probably invalid, but the mortgage was a mere incident of the loan. Though the mortgage was invalid and worthless, the debt it secured was actual and enforceable. The appellant tried to purchase Hughes' automobile, but wished it to be clear of the apparent incumbrance. The money which was paid to the respondent was to discharge a bona fide indebtedness; consequently, it cannot be said that there was no consideration for the payment, or that the respondent cannot, in good conscience, keep the money. The situation is different than in those cases where both the note and mortgage were tainted with fraud. Here there was no mistake as to the indebtedness which was paid.''

Appellant relies on *Ritter* v. *Manhattan A. F. Corp.*, 5 N.Y.S. 2d 773 as being on all fours. That case was before the Supreme Court, Appellate Term, on appeal from the municipal court. The *per curiam* opinion which does not pretend to give the facts in any detail, and cites no authority, reads:

''Both parties to the transaction honestly believed that Smith, the chattel mortgagor, was the owner of the car stolen by him. Appellant, under a mutual mistake of fact, paid the balance due on the chattel mortgage to the respondent, the assignee of the chattel mortgagee. The car having been delivered to the true owner, there was a failure of consideration entitling the appellant to recover back what was paid, from the respondent, upon whom the loss should properly fall.''

If we assume that the facts were parallel, there remains the Gaffner case where the facts and the law are discussed in detail and a conclusion reached contrary to that of the New York case. The reasoning of the Gaffner case commends itself to us and we are prepared to follow it rather than the Ritter case.

The Gaffner case disposes of appellant's second, third and fourth points, namely, unjust enrichment, mutual mistake of fact, and failure of consideration. ■ His two remaining points are, first, that "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer" (Civ. Code, § 3543). Appellant cannot point to any negligence of the bank which caused appellant's loss. It is argued that appellant relied on the fact that the bank had lent money on the car. The bank believed the car to be Cassaro's but no legal liability can be predicated on this mistake. It did nothing to induce appellant to buy the car or pay off the note; it simply told appellant that $1,008.37 would settle its claim, and that it had taken a chattel mortgage, all of which was true.

■ Appellant's fifth contention, that there was a breach of implied warranty, is based on a false premise. Counsel cite section 1756 Civil Code, which deals with "Warranties on sale of document." The bank did not *sell* its note or mortgage. Appellant alleged that he, "to acquire clear title to said automobile, did pay off, by check, said purported chattel mortgage . . . and the said defendant did release said purported chattel mortgage." Nothing was "sold" but the Buick, and that was sold by Cassaro (not the bank), according to appellant's own pleading. The bank made no warranties to appellant. Appellant simply inquired, and found out that Cassaro owed the bank $1,008.37, and without further ado paid it off. There was no assignment of either the note or the mortgage, but an extinguishment of both the debt and the lien.

Appellant relies on *National Shawmut Bank of Boston* v. *Fidelity Mutual Life Ins. Co.* (1945), 318 Mass. 142 [61 N.E.2d 18, 159 A.L.R. 478], but the opinion therein itself (at 61 N.E.2d 21, 159 A.L.R. 483-4) differentiates that case from *Gaffner* v. *American Finance Co., supra.* In the Gaffner case the court said: "The situation is different than in those cases where both the note and mortgage were tainted with fraud. *Here there was no mistake as to the indebtedness which was paid.*" (Emphasis added.) In the Shawmut Bank case Schneierson, whose name had been forged as the maker of the notes

and the assignor of the insurance policies, by Meissel, was never indebted to the defendant insurance company, which had received from the Shawmut Bank the money to pay off the supposed indebtedness. Here Cassaro had become the respondent bank's debtor in a routine banking transaction and had given it a genuine promissory note. The court in the Shawmut Bank case, after citing the Gaffner case (among others) says: "The case at bar differs from the cases just discussed primarily in the fact that in this case the defendant had no valid claim against its supposed debtor, Schneierson, or against anyone, except its claim against Meissel for the forgery." When the court thus distinguishes the Gaffner case it likewise distinguishes the instant case, since the facts in both are substantially the same.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied April 7, 1951, and appellant's petition for a hearing by the Supreme Court was denied May 3, 1951. Schauer, J., voted for a hearing.