**ASSOCIATES DISCOUNT CORPORATION, a Corporation, et al., Plaintiffs in Error,**

v.

**Earl CLEMENTS, Defendant in Error.**

**No. 37467.**

Supreme Court of Oklahoma.

Feb. 4, 1958.

McClelland, Bailey & McClelland, by Robert O. Bailey, Oklahoma City, for plaintiffs in error.

Smith, Johns & Neuffer, Oklahoma City, for defendant in error.

WILLIAMS, Justice.

This action was brought by Earl Clements, hereinafter referred to as plaintiff, against Associates Discount Corporation, a Corporation, and Associates Investment & Loan Company, a Corporation, hereinafter referred to as defendants, for money had and received. Plaintiff was a used car dealer in Oklahoma City, and defendants were affiliated corporations engaged in the automobile finance and loan business. On February 11, 1952, defendants made a loan in the amount of $1,871 to one Walker, taking a note secured by a mortgage on a 1951 Pontiac automobile. Walker was in possession of the automobile with an Oklahoma title certificate and represented himself to the defendant as being the owner. The loan was made in complete good faith. Thereafter, on March 24, Walker sold the automobile to plaintiff for the sum of $2,325, again representing himself to be the owner. Of the purchase price, $1,767.77 was used to pay off the mortgage debt to defendants, a check being made payable to Associates Discount Corporation and immediately endorsed to the Associates Investment & Loan Company, and the mortgage and note were marked "paid" and surrendered to Walker. The balance of the purchase price was paid to Walker. Plaintiff also acted in complete good faith. Thereafter it developed that the automobile in question had been stolen, probably by Walker, some time prior to Walker's obtaining the loan from defendants. Plaintiff then brought this action seeking to recover from defendants that part of the purchase price, $1,767.77, used to discharge the mortgage debt to defendants. Judgment was for the plaintiff, and defendants bring this appeal.

Plaintiff's petition alleges that plaintiff is in the business of buying and selling automobiles; that on March 24, 1952, he agreed to purchase a certain 1951 Pontiac automobile from Walker, who represented himself to be the owner; that as a part of said sale it became necessary to pay to defendants the sum of $1,767.77 for the purpose of clearing or securing release of a lien on the automobile; that on February 11, 1952, Walker had mortgaged the automobile to defendants, representing himself to be the owner thereof, when in fact he had stolen the same; that plaintiff through mistake of fact paid to defendants the amount of $1,767.77 for the purpose of clearing said mortgage; that the mortgage was not valid and plaintiff did not receive consideration and that through mistake of fact plaintiff was entitled to recover.

Defendants' answer admitted that they had held the mortgage alleged in plaintiff's petition and that the same was given to secure payment of the promissory note of the same date, executed and delivered by Walker for a loan made to Walker; that the mortgage was taken in good faith and without notice of any defect in the title of the said Walker, if such defect existed; that plaintiff entered into the agreement to purchase, as alleged in the petition, and as a part of said sale and purchase price, the outstanding balance unpaid on the note indebtedness was paid and that defendants thereupon canceled and released the note indebtedness and the chattel mortgage securing the same.

There was no material dispute as to the facts, which were all developed by plaintiff's witnesses, and when plaintiff rested, defendant also rested and moved for judgment. Both sides submitted requested findings of fact and conclusions of law. The court rejected all of the findings and conclusions requested by defendants and adopted all of the findings and conclusions requested by plaintiff and rendered judgment for plaintiff.

Defendants assign as error the overruling of the demurrer to the petition, the overruling of the demurrer to the evidence, the denial of the motion of the defendants for judgment upon all of the evidence, the rejection of each of the defendants' requested findings of fact and conclusions of law, the adoption of plaintiff's requested findings of fact numbers two, five and six, and each of his requested conclusions of law; that the judgment is not sustained by the evidence and is contrary to law; and the over-

ruling of defendants' motion for new trial. Defendants present all of such assignments of error under two propositions which are so interrelated that they were argued and will be considered together. Defendants' first proposition is: "An innocent purchaser of a stolen automobile cannot recover that portion of the purchase price paid to satisfy a mortgage given to secure a note executed by the thief for a prior bona fide loan by the mortgagee made in equal good faith, the debt secured being actual and enforceable and discharged so that the payment was not without consideration or made by mistake, nor paid under such circumstances as to require the mortgagee to repay that portion of the purchase price to the purchaser." Defendants' second proposition is that: "The purchaser of a stolen automobile and the holder of a mortgage thereon securing a prior loan to the thief, both being equally innocent of knowledge that the automobile was stolen and a portion of the purchase price being used to pay off the mortgage debt which was discounted and released and the note and mortgage surrendered, there is no mistake of fact in contemplation of law whereby the purchaser may recover from the mortgagee the money received by it to satisfy the mortgage debt, the mortgagee having changed its position by the release of the debt."

The question thus presented is one of first impression in this jurisdiction.

■ Plaintiff relies upon the general principle announced in Continental Oil Company v. Rapp, Okl., 301 P.2d 198, and Haubert v. Navajo Refining Company, 129 Okl. 195, 264 P. 151, that where money is paid to another under the influence of a mistake, that is on the mistaken supposition of the existence of a specific fact that would entitle the other to the money, and the money would not have been paid had it been known to the payor that the fact was otherwise, it can be recovered back. The ground upon which such rule rests is that money paid through misapprehension of fact in equity and good conscience belongs to the party paying it, and there is no controversy as to the correctness of

such rule, the difficulty arising in the application of the same. The question which is presented to this court for the first time is, whether the principle or rule above stated is applicable to the situation where one advances money to pay a debt held by another upon the mistaken assumption of the existence of facts under which an apparent lien in favor of the other and securing the indebtedness would be valid, the facts actually being such as to render the lien invalid. This general question has arisen in a number of cases from other jurisdictions, and most of such cases may be found in the Annotations at 159 A.L.R. 487, and at 114 A.L.R. 382. Most of such cases deal with one or the other, or some slight variation thereof, of the following factual situations: (1) A steals tangible personal property and executes a mortgage on it in favor of B, after which he sells the property to C, a part of the purchase price being applied to the payment of the supposed mortgage in favor of B; (2) A impersonates the owner of real property and obtains a loan from B, giving the latter as security a forged mortgage purporting to be executed by the owner of the land, whereupon A repeats the impersonation and secures a larger loan from C under a second forged mortgage, a part of the proceeds of this loan being paid to B for a release or discharge of the purported mortgage in his favor. The question in each case is, of course, the right of C, under the circumstances, to recover back the payments made to B. It will be noticed that situation (1) is identical with the situation presented by the case at bar, and the cases dealing with that situation would therefore be more pertinent and persuasive. In this category we find decisions from the appellate courts of California and Washington in the cases of Gaffner v. American Finance Company, 120 Wash. 76, 206 P. 916, 28 A.L.R. 624, decided in 1922, and Hilliard v. Bank of America National Trust & Savings Ass'n, 102 Cal.App.2d 730, 228 P. 2d 327, decided in 1951. Both of these cases hold that C cannot recover from B. The same holding is found in American Law

Institute Restatement: Restitution, sec. 14, Illus. 6, which is used to illustrate the general principle that restitution will not be ordered against an innocent defendant who has given value for the benefit received. The only case appearing to fall in this same category in which a recovery was allowed is the case of Ritter v. Manhattan A. F. Corp., Sup.App.T., 5 N.Y.S. 2d 773, cited and relied upon by plaintiff. Such case, however, was not before what would be termed one of the appellate courts of the State of New York, that is, the Court of Appeals or the Appellate Division of the Supreme Court, but was before the Supreme Court, first department, on appeal from the Municipal Court. The one paragraph per curiam opinion, issued in 1938, does not purport to give the facts in any detail and cites no authority. The only citation of or reference to such case by any court that we have found was by the California Court in the case of Hilliard v. Bank of America National Trust & Savings Ass'n, supra, [228 P.2d 330] in which the court, after calling attention to such case, disposed of it with the following language:

"If we assume that the facts were parallel, there remains the Gaffner case where the facts and the law are discussed in detail and a conclusion reached contrary to that of the New York case. The reasoning of the Gaffner case commends itself to us and we are prepared to follow it rather than the Ritter case."

Plaintiff also cites and relies upon National Shawmut Bank of Boston v. Fidelity Mutual Life Ins. Co., 318 Mass. 142, 61 N.E.2d 18, 159 A.L.R. 478; Grand Lodge, A. O. U. W. v. Towne, 136 Minn. 72, 161 N.W. 403, L.R.A.1917E, 344, and Strauss v. Hensey, 9 App.D.C. 541, all of which involved factual situations substantially identical with that set out in illustration (2) above, and hold that C is entitled to recover from B. These cases by no means represent the weight of authority on the question, however, as we find the same question presented in the cases of Russell v. Richard & Thalheimer, 6 Ala. App. 73, 60 So. 411, certiorari denied Ex parte Richard & Thalheimer, 180 Ala. 580, 61 So. 819; California Pac. Title & Trust Co. v. Bank of America, 12 Cal.App.2d 437, 55 P.2d 533; Walker v. Conant, 69 Mich. 321, 37 N.W. 292, 13 Am.St.Rep. 391; New York Title & Mortgage Co. v. Title Guarantee & Trust Co., 206 App.Div. 490, 201 N.Y.S. 529, and Ketchum v. Stevens, 19 N.Y. 499, and in all of such cases it was held that C could not recover from B. We also find situation (2) presented in American Law Institute Restatement: Restitution, sec. 14, Illus. 7, and the answer there given is that C cannot recover from B.

We do not find it necessary, however, in the case at bar, to determine which of the situation (2) lines of cases to follow in this jurisdiction, because the cited situation (2) cases which hold that C is entitled to recover from B distinguish themselves from the situation (1) type of cases and therefore of necessity from the case at bar. In National Shawmut Bank of Boston v. Fidelity Mutual Life Insurance Co., supra [318 Mass. 142, 61 N.E.2d 21], a situation (2) case holding that C is entitled to recover from B, the court, after citing Gaffner v. American Finance Co., supra, a situation (1) case, and other cases involving still a third situation, not yet discussed, said:

"The case at bar differs from the cases just discussed primarily in the fact that in this case the defendant had no valid claim against its supposed debtor, Schneierson, or against anyone, except its claim against Meissel for the forgery."

The distinction between the two types of cases was likewise noted in Hilliard v. Bank of America National Trust & Savings Ass'n, supra, a situation (1) case, in which the court used the following language:

"Appellant relies on National Shawmut Bank of Boston v. Fidelity Mutual Life Ins. Co., 1945, 318 Mass. 142, 61 N.E.2d 18, 159 A.L.R. 478, but the opinion therein itself, at 61 N.E.2d 21, 159 A.L.R. 483–484, differentiates that

case from Gaffner v. American Finance Co., supra. In the Gaffner case the court said: 'The situation is different than in those cases where both the note and mortgage were tainted with fraud. *Here there was no mistake as to the indebtedness which was paid.*' (Emphasis added.) In the Shawmut Bank case Schneierson, whose name had been forged as the maker of the notes and the assignor of the insurance policies, by Meissel, was never indebted to the defendant insurance company, which had received from the Shawmut Bank the money to pay off the supposed indebtedness. Here Cassaro had become the respondent bank's debtor in a routine banking transaction and had given it a genuine promissory note. The court in the Shawmut Bank case, after citing the Gaffner case (among others) says: 'The case at bar differs from the cases just discussed primarily in the fact that in this case the defendant had no valid claim against its supposed debtor, Schneierson, or against anyone, except its claim against Meissel for the forgery.' (318 Mass. 142, 61 N.E.2d 21.) When the court thus distinguishes the Gaffner case it likewise distinguishes the instant case, since the facts in both are substantially the same."

■ There is still a third line of cases, which it appears to us are more nearly in point with the case at bar than the situation (2) cases above cited, although not quite so squarely in point from a factual point of view as the situation (1) cases above cited. These cases, of which there are a great number, hold that the rule as to recovery of payments made under a mistake of fact does not apply where, as a result of a mistake or fraud between the original parties, money is paid by one of them on account of the other to a third party, either directly or through the intervention of the other, who receives the same in good faith without knowledge of the mistake or fraud, in payment of a claim by him against the latter. In such case, by the overwhelming weight of authority, no recovery may be had against such third party. See cases listed in the Annotation at 114 A.L.R. 384 and 385. Typical examples of these cases are Union Central Life Insurance Co. v. Glasscock, 270 Ky. 750, 110 S.W.2d 681, 114 A.L.R. 373, and Merchants' Insurance Co. of Providence v. Abbott, 131 Mass. 397. In the Union Central Life Ins. Co. case plaintiff purchased part of a tract of land on which there was a mortgage held by defendant, the purchase price being paid to defendant to procure a release of the land sold from the lien of the mortgage. It subsequently appeared that there was a prior mortgage on the land, which had been overlooked by the abstractor and accordingly did not appear on any of the abstracts referred to by the parties during their negotiations. The first mortgage was later foreclosed, rendering defendant's mortgage worthless. The court held that the plaintiff purchaser of the land, who had paid to defendant mortgagee, through the vendor, the amount of the mortgage, at the request of the vendor, under a mistake of fact that the property was otherwise unencumbered, whereas, as a matter of fact there was a prior outstanding mortgage against it, could not recover back from the mortgagee the amount paid, on the theory that payment was made as a result of mistake and that there was a failure of consideration, where the mortgagee was not aware of such mistake and received the payment in good faith in satisfaction of its mortgage claim against vendor. In the case of Merchants' Insurance Co. of Providence v. Abbott, supra, after a loss by fire, caused by the fraud of the assured Abbott, which had been adjusted by the insurers, Abbott assigned his claim under the policy to a creditor of his to secure a debt, and the insurers, at the request of the assured Abbott, paid to the creditor the amount of the policy so adjusted, both the insurers and the creditor being ignorant of the fraud invalidating the assigned insurance claim, and the court held that the insurers might recover from the insured, Abbott, the sum so paid, but could not recover it back from the creditor. The court, in discussing the ques-

tion presented of when the implied obligation to make restitution will be imposed to prevent the unjust enrichment of one at another's expense, said:

"There can be no doubt of the liability of Abbott in this action. If the money had been paid by the plaintiffs to him, it could be recovered back as money paid under the influence of a mistake between them and him as to the existence of a state of facts that would entitle him to the money. * * Although Abbott has not in fact received the money, the payment of the money by the plaintiffs at his request in discharge of his debt to the other defendants is equivalent to the receipt by Abbott of so much money, and is sufficient to enable the plaintiffs to maintain the action against him upon the special count, if not upon the general count for money had and received. * * *

"As to the other defendants a different question is presented. If, before receiving the money from the plaintiffs, they had known the true state of facts, and had participated in Abbott's fraud, they would have been liable to refund the money. * * * But the report states that there was no evidence offered, nor was it contended at the trial, that they had any knowledge of the fraudulent conduct of Abbott, but it was conceded that they were wholly innocent parties.

" * * * The only contract of the plaintiffs was with Abbott, and the only mistake was as between them and him. The money was voluntarily paid by the plaintiffs in discharge of Abbott's supposed claim upon them under their policy, and to these defendants as the persons designated by Abbott to receive it, and was in legal effect a payment by the plaintiffs to Abbott. * * * In other words, the money was paid by the plaintiffs to these defendants, not as a sum which the latter were entitled to recover from the plaintiffs, but as a sum which the plaintiffs admitted to be due to Abbott, under their own contract with him, and which at his request and in his behalf they paid to these defendants, who at the time of receiving it knew no facts tending to show that it had not in truth become due from the plaintiffs to Abbott. * * As between the plaintiffs and these defendants, there was no fraud, concealment or mistake. These defendants had the right to receive from Abbott the sum which was paid to them. * * They hold the money honestly, for value, with the right to retain it as their own, under a title derived from Abbott, and independent of the fraud practiced by him upon the plaintiffs.

"The case stands just as if the money had been paid by the plaintiffs to Abbott, and by Abbott to these defendants, in which case there could be no doubt that, while the plaintiffs could recover back the amount from Abbott, neither Abbott nor the plaintiffs could recover the amount from these defendants. The fact that the money, instead of being paid by the plaintiffs to Abbott, and by Abbott to these defendants, was paid directly by the plaintiffs to these defendants, does not make any difference in the rights of the parties. The two forms do not differ in substance. In either case, Abbott alone is liable to the plaintiffs, and these defendants hold no money which ex aequo et bono they are bound to return either to Abbott or to the plaintiffs."

In Gaffner v. American Finance Co., supra [120 Wash. 76, 206 P. 918], which, as we have already pointed out, is squarely in point with the case at bar, the court said:

"The general rule is that an action for money had and received can be maintained whenever one has received money from another by mistake, and which the receiver ought not, in equity and good conscience, to retain. We are of the opinion, however, that the facts of this case do not come within that rule. The respondent had made a bona

fide loan to Hughes, not upon a forged note, but upon that given by the borrower himself. Hughes actually became indebted to the respondent. It is true the mortgage given to secure the indebtedness was upon a stolen machine, and was consequently fraudulently made and probably invalid, but the mortgage was a mere incident of the loan. Though the mortgage was invalid and worthless, the debt it secured was actual and enforceable. The appellant tried to purchase Hughes' automobile, but wished it to be clear of the apparent incumbrance. The money which was paid to the respondent was to discharge a bona fide indebtedness; consequently, it cannot be said that there was no consideration for the payment, or that the respondent cannot, in good conscience, keep the money. The situation is different than in those cases where both the note and mortgage were tainted with fraud. Here there was no mistake as to the indebtedness which was paid. The following cases, although not directly in point, are enlightening on the proposition we have just discussed: Ball v. Shepard, 202 N.Y. 247, 95 N.E. 719; Behring v. Somerville, 63 N.J.L. 568, 44 A. 641, 49 L.R.A. 578; Brand v. Williams, 29 Minn. 238, 13 N.W. 42; Winslow v. Anderson, 78 N.H. 478, 102 A. 310, L.R.A.1918C, 173; Merchants' Ins. Co. of Providence v. Abbott, supra. * * *

"If we look at this case from a purely equitable viewpoint, the result to which we must come will not be different than that above announced. Appellant made the payment to the respondent in the belief that he was paying a bona fide, valid, indebtedness due from Hughes, and in so supposing there was no mistake. As to the mortgage; if respondent was innocent, so was the appellant. The equities in favor of the respondent are not less great than those running with the appellant."

In Hilliard v. Bank of America National Trust & Savings Ass'n, supra, also squarely in point with the case at bar, the court said:

"The bank, when it lent Cassaro $1000 believed him to be the owner of the car; appellant when he paid $1250 for the car believed Cassaro to be its owner; both were mistaken, but such type of mistake in the present circumstances is no basis for an action by one innocent party against another for restitution."

Plaintiff makes several contentions in support of his position, all of which are completely answered in the opinions in Gaffner v. American Finance Co., supra, and Hilliard v. Bank of America National Trust & Savings Ass'n, supra, and we therefore do not find it necessary to treat them in detail here.

■ We are of the opinion and hold that under the great weight of authority, plaintiff is not entitled to recover from defendants under the circumstances shown to have existed in this case, and that the trial court erred in concluding as a matter of law, that plaintiff was so entitled.

Judgment reversed and the cause remanded with instructions to enter judgment for defendants.

WELCH, C. J., and DAVISON, HALLEY, JOHNSON and BLACKBIRD, JJ., concur.

CORN, V. C. J., dissents.